## Vandalia Coal Company v. Yemm.

[No. 21,556. Filed June 10, 1910. Rehearing denied April 28, 1911.]

1. APPEAL.—*Harmless Error.—Judgment on one Paragraph of Complaint.—Rulings on Another.*—Erroneous rulings upon a paragraph of complaint will not constitute reversible error, where the answers to the interrogatories to the jury show that the judgment rests upon another paragraph. p. 530.

2. MINES.—*Coal.—Statutes.—Purpose.*—The coal mining acts of 1885 (Acts 1885 p. 65), 1891 (Acts 1891 p. 57), and 1905 (Acts 1905 p. 65) show an increasing determination to safeguard the health and lives of the miners. p. 531.

3. MASTER AND SERVANT.—*Mines.—Coal.—Dust Explosions.—Complaint.—Proximate Cause.—Statutes.*—A complaint alleging that defendant coal mining company negligently permitted the roadways and entries in its mine to become and remain so dry that the air was charged with dust, that such roadways and entries were dangerous for use and likely to create a dust explosion, that the concussion and fire from blasting caused a dust explosion therein and that the plaintiff servant was injured "solely and proximately by reason of [defendant's] neglect in that behalf," shows that such negligence was the proximate cause of the injury, and states a cause of action under §8579 Burns 1908, Acts 1905 p. 65, §11, providing that "in case the roadways or entries of any mine are so dry that the air becomes charged with dust, such roadways or entries shall be regularly and thoroughly sprinkled," and further providing that "it shall be the duty of the inspector to see that this provision is carried out." p. 531.

4. MASTER AND SERVANT.—*Mines.—Coal Dust.—Assumption of Risk.—Complaint.—Negativing Notice.*—Under §8579 Burns 1908, Acts 1905 p. 65, §11, providing that "in case the roadways or entries of any [coal] mine are so dry that the air becomes charged with dust, such roadways or entries shall be regularly and thoroughly sprinkled," and further providing that "it shall be the duty of the inspector to see that this provision is carried

out," a servant working in a mine, knowing of such dust and continuing at work therein without promise of remedy of such condition, does not assume the risk thereof; and it is not necessary in a complaint by the servant to negative his knowledge thereof. p. 533.

5. MASTER AND SERVANT.—*Coal Mines.—Negligence.—Proximate Cause.—Complaint.*—A complaint by a miner against a coal mining company alleging that blasting is the necessary and customary method of mining coal, that the plaintiff and other miners were using such method, that the explosion which injured the plaintiff would not and could not have occurred but for the dust-laden air in such mine, which exploded in the ordinary course of the business of mining, shows that such dust was the proximate cause of the injury. p. 533.

6. APPEAL.—*Instructions.—How Made Part of Record.*—Where the judge signs and dates a memorandum at the close of instructions requested by plaintiff, stating that he determined before instructing the jury to give each thereof, and the defendant's attorneys signed and dated a memorandum immediately thereafter, excepting to the giving of each thereof, and a like memorandum was made by the judge as to the instructions requested by defendant, by which he signified his intention of giving all said instructions save certain ones that were refused, and defendant's attorneys made a similar memorandum excepting to the refusal of those rejected, such instructions are a part of the record under §561 Burns 1098, Acts 1907 p. 652. p. 534.

7. EXCEPTIONS, BILLS OF.—*Extension of Time for Filing.—How Shown.—Appeal.*—Under §661 Burns 1908, Acts 1905 p. 45, providing that if an extension of time for the filing of a bill of exceptions is "granted by the judge in vacation, such action may be indicated by a recital in the bill of exceptions itself, but if such extension is granted in term time, the same may be indicated by an order of court, duly entered on the order-book," a bill of exceptions filed after the time first granted is not in the record, where a vacation entry on the order-book, signed by the judge, shows the granting of such extension, and where another order-book entry made in term shows the filing thereof "within the time heretofore allowed by the court, and as extended by the judge in vacation," the bill itself reciting the filing thereof "within the time heretofore allowed, as extended by the order of the court." pp. 534, 535, 536, 543, 544, 545, 547, 548, 549.

8. EXCEPTIONS, BILLS OF.—*How made Part of Record.*—Prior to the passage of the act of 1905 (Acts 1905 p. 45, §661 Burns 1908) no extension of time was authorized, and a recital in a bill of exceptions as to the time granted for its filing was insufficient, an order-book entry thereof being necessary. p. 535.

9. **EXCEPTIONS. BILLS OF.**—*Extensions for Filing.*—*Vacation Entries.*—*Term Entries.*—*Validity.*—A vacation order-book entry, signed by the judge, showing an extension of time for the filing of a bill of exceptions is void, there being no statute authorizing such an entry; but an extension granted in term must be shown by such an entry. pp. 536, 544.

10. **APPEAL.**—*Instructions.*—*Omission of Evidence.*—In the absence of the evidence, an instruction will be considered as properly given unless it is radically wrong under any supposable evidence within the issues. pp. 536, 540.

11. **MASTER AND SERVANT.**—*Instructions.*—*Confining to Evidence.*—Where the court in one instruction confines the jury, in deciding the questions presented, to the evidence, it is unnecessary to repeat such instruction in others. p. 537.

12. **MASTER AND SERVANT.**—*Damages.*—*Elements.*—*"Condition in Life."*—*Instructions.*—An instruction, in an action for damages by a servant against his master, that in determining the damages to be given, if any, the jury should consider, among other proper elements, plaintiff's "condition in life," does not constitute reversible error, the expression evidently being used to designate plaintiff's physical condition resulting from the alleged injury. pp. 539, 540, 541, 550.

13. **DAMAGES.**—*Award of.*—*Discretion of Jury.*—Juries are allowed a sound discretion in awarding damages in personal injury cases, mathematical certainty in such calculations being impossible. p. 539.

14. **DAMAGES.**—*Mental Anguish.*—Mental anguish arising from actual physical injuries, the pecuniary loss resulting from physical injuries, loss of earning capacity, the effect of such injuries upon the earning capacity, and necessary expenses incurred because of the injuries received, are proper elements for consideration in the assessment of damages for personal injuries; and the amount given because of mental anguish, while left to the sound discretion of the jury, must be awarded in accordance with the established rules of law. p. 540.

15. **DAMAGES.**—*Award of.*—*Rule.*—*Compensation.*—The basis of the rule for the assessment of damages in a personal injury case is compensation for the injuries sustained. p. 540.

16. **MASTER AND SERVANT.**—*Personal Injuries.*—*Plaintiff's Condition.*—*Evidence.*—In an action for damages for personal injuries only that evidence concerning plaintiff's condition is admissible which tends to show his physical condition as affected by the injuries sustained. p. 540.

17. **DAMAGES.**—*Excessive.*—In the absence of the evidence, a judgment for $10,000 will not be considered excessive, where the complaint shows that the plaintiff was badly burned about his

Vandalia Coal Co. v. Yemm—175 Ind. 524.

hands, head, arms and body, that he was injured internally by inhaling gases, smoke and dust created by a dust explosion in defendant's coal mine, that he was permanently injured, and still suffers great pain, that he was unable to work for many months, that before such injuries, he had earned five or six dollars a day and that he had expended $200 for medical attention.   p. 541.

18. MASTER AND SERVANT.—*Coal Mines.*—*Injuries.*—*Complaint.*— *Paragraphs.*—*Judgment.*—*Interrogatories.*—Where one paragraph of a complaint alleges that plaintiff employe was injured because of a dust explosion in defendant coal company's mine, and a second paragraph alleges that such injuries were caused by a dust explosion and by the firing of illegal shots, answers to interrogatories to the jury showing that illegal drillings were made but that no shots therefrom had been fired before the explosion happened, it is sufficiently shown that the verdict rested upon the first paragraph of the complaint.   p. 541.

19. MINES. — *Coal.* — *Ventilation.*—*Dust Explosions.*—*Liability.*— The owner and operator of a coal mine that negligently fails to sprinkle the entries thereof, thereby causing a dust explosion, is liable for injuries caused thereby to a miner, though the provision of the statute (§8579 Burns 1908, Acts 1905 p. 65, §11) requiring entries to be sprinkled is contained in a section regulating ventilation of mines, such conclusion being emphasized by a subsequently enacted section (§8613 Burns 1908, Acts 1907 p. 347, §12) giving the mine inspector power to require such sprinkling.   *Indiana, etc., Coal Co.* v. *Neal,* 166 Ind. 458 distinguished.   p. 542.

20. EXCEPTIONS, BILLS OF.—*Right to.*—Bills of exceptions are statutory.   p. 544.

21. APPEAL.—*Correction of Record.*—*Nunc Pro Tunc Entries.*— —*Unauthorized.*—An unauthorized vacation entry cannot be cured or remedied by a *nunc pro tunc* entry.   p. 545.

22. EXCEPTIONS, BILLS OF.—*Extension of Time for Filing.*—*Judicial Acts.*—The granting of an extension of time within which to file a bill of exceptions, is a judicial act.   p. 546.

23. COURTS.—*Clerks' Vacation Entries.*—*Judicial Acts.*—*Estates.*— *Wills.*—Entries made by a clerk in vacation are not judicial acts; and no vacation entries are authorized except in relation to decedents' estates (§2726 Burns 1908, §2219 R. S. 1881) and in probating wills (§3145 Burns 1908, §2587 R. S. 1881); but in granting letters testamentary, or of administration, the approval of the court is required (§2760 Burns 1908, §2243 R. S. 1881). p. 546.

24. STATUTES.—*Remedial.*—*Construction.*—A remedial statute will not be extended beyond the spirit and intention thereof, though such extension might be within its letter.   p. 547.

Vandalia Coal Co. v. Yemm—175 Ind. 524.

25. EXCEPTIONS, BILLS OF.—*Extensions.*—*Procedure.*—*Notice.*—To secure an extension of time for the filing of a bill of exceptions, a written application therefor should be made, notice thereof should be given to the opposite party, and the endorsement of the judge granting the extension should be made upon the application; and such matters should all be incorporated in the bill of exceptions in order to show such extension if granted in vacation. p. 548.

26. NEW TRIAL. — *Receivers.* — *Bonds.*—*Recognizances.*—*Vacation Acts of Judge or Clerk.*—A new trial as of right cannot be granted in vacation, nor, under the prior statute, could a receiver be appointed by the judge, or a receiver's bond be approved by the clerk; and a forfeiture of a recognizance in vacation is void. p. 549.

27. APPEAL. — *Determination of Case.* — *Harmless Error.*—*How Shown.*—Erroneous rulings are presumed to be harmful, but the court may examine the entire record and from it determine whether such rulings may not be harmless. p. 550.

28. MASTER AND SERVANT.—*Contributory Negligence.*—*Burden of Proof.*—*Instructions.*—An instruction, in a personal injury case, that "the burden of proving * * * contributory negligence, if any existed, rests upon the defendant, and before such defense can avail the defendant, it must be established by the preponderance of the evidence," is not erroneous, especially where another instruction informed the jury that if plaintiff was "free from contributory negligence, and was in the exercise of care and diligence for his own safety, he would be entitled to recover if the material allegations of his complaint were proved." p. 551.

29. MASTER AND SERVANT.—*Coal Mines.*—*Sprinkling.*—*Duties of Master.*—*Instructions.*—*Assumption of Risk.*—An instruction, in an action by a miner for injuries sustained by a dust explosion, that "the servant must use his faculties in ascertaining whether or not danger actually exists, if it is apparent, or open to view," and that "he is not bound to be looking out, or searching, for latent or hidden dangers, nor is he charged with knowledge of the dangerous conditions of the place in which he is required to work, if it is the master's duty to make it safe, for the servant is justified in assuming, within reasonable limits, that the master has performed his duty, and he is also justified in acting upon that assumption, within reasonable limits," is more favorable to defendant than to plaintiff, where the negligence complained of was defendant's failure to sprinkle the entries in its coal mine, as required by §8579 Burns 1908, Acts 1905 p. 65, §11, thereby causing a dust explosion, to plaintiff's injury. p. 553.

30. APPEAL.—*Determination of.*—*Instructions on one Paragraph.*— *Judgment on Another.*—*Harmless Error.*—The refusal of the

court to give a correct instruction applicable only to one paragraph of a complaint is harmless, where the judgment rests upon another.  p. 554.

From Putnam Circuit Court;  *J. M. Rawley*, Judge.

Action by William Yemm against the Vandalia Coal Company.  From a judgment on a verdict for plaintiff for $10,000, defendant appeals.  *Affirmed.*

*Lamb & Beasley, U. Z. Wiley, T. C. Grooms, S. M. McGregor* and *Charles E. Barrett*, for appellant.

*S. A. Hays, G. A. Knight, A. W. Knight* and *B. F. Watson*, for appellee.

MYERS, J.—Appellee commenced this action against appellant in the Clay Circuit Court, for damages for alleged negligence resulting in his injury.  The venue was changed to Putnam county, where the cause was tried.

The complaint is in two paragraphs.  The first paragraph alleges that appellant was a corporation operating a coal mine, wherein 250 men were employed.  The mine consisted of a vertical shaft, from the bottom of which a main entry extended westwardly many hundreds of yards, from which ten cross-entries were turned off to the north, and from these cross-entries mining rooms were turned off by extracting the coal veins.  Plaintiff was working in the ninth north cross-entry on December 5, 1906.  The negligence averred in this paragraph is the failure to sprinkle the roadway or entry to the shaft.  The complaint alleges that the dust had become from two to six inches deep in said entry, had not been sprinkled for a period of many weeks, and for six months had been permitted to become so dry that the air was charged with it to such an extent as to render said entry dangerous for use, as said dust was likely at any time to create what is known as a dust explosion.  It is alleged that appellant had notice of these conditions; that on attempting to leave his work he was going along the usual and ordinary way to the shaft, when suddenly and without warning a

terrific explosion of said dust occurred in said entry, enveloping him in a sheet of flame, and greatly injuring him; that the concussion and fire which resulted from firing shots or blasting coal in the mine in the customary manner, well known, recognized and acted upon by miners and by appellant, acting upon the dust-charged air in said entry caused the explosion. The paragraph counts upon a liability for failure to sprinkle the roadways, as required under the last clause of §8579 Burns 1908, Acts 1905 p. 65, §11.

The second paragraph is practically the same as the first, except that the cause of the explosion is alleged to have been the negligent and careless acts of certain other workmen in the mine, who, in violation of the statutory mining laws, fired "illegal shots," drilled holes and put in blasts in improper places, and that these shots, acting upon the dust-laden entries, caused the explosion of dust, and that appellee was injured by the combined negligence of appellant in failing to sprinkle the roadways, and of the miners in putting in the irregular shots or blasts.

1. As the answers to the interrogatories show that the injury resulted from a "dust explosion," and the judgment is based upon the first paragraph of the complaint, it will not be necessary to consider the second paragraph.

Appellants contention as to the insufficiency of the first paragraph of complaint is based on the claim that the sprinkling clause at the close of §8579, *supra*, has no application to this case, for the reason that the act was passed solely for the ventilation of coal mines, and that the clause cannot be considered for any other purpose. Reliance is placed principally upon the case of *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458, in which it was held that the provisions of §7478 Burns 1901, Acts 1891 p. 57, §18, construed in the light of §7443 Burns 1901, Acts 1885 p. 65, §2, in regard to opening and closing doors used in ventilating mines, were designed to prevent interference with the circulation of air, and not designed to provide aid for drivers.

The present statute was not in force when that case was decided. The history of this character of legislation,

2. beginning with 1885 (Acts 1885, *supra*), enlarged in 1891 (Acts 1891, *supra*), and again in 1905 (Acts 1905, *supra*) discloses an increasing interest in legislation for the safety of the lives and limbs, and the preservation of the health of miners. The provision in regard to sprinkling mines first appeared in the act of 1905 (§8579, *supra*).

3. The language is as follows: "In case the roadways or entries of any mine are so dry that the air becomes charged with dust, such roadways or entries shall be regularly and thoroughly sprinkled. And it shall be the duty of the inspector to see that this provision is carried out." This provision is a part of the same section in which provision is made for ventilating mines, but throughout the section the duties of inspectors are declared, and when we come to the clause respecting sprinkling, there is again the specific duty of the inspector in regard to that provision, thus emphasizing the duty of the mine operator. It is a provision engrafted upon section sixteen of the act of 1891 (Acts 1891 p. 57, §7476 Burns 1901), which embraced the subject of ventilation. It may be conceded that allaying the dust is in the interest of health, and also that it may reasonably be said to be a proper subject of ventilation, but it will be noted that the ventilation the statute contemplates is that of procuring fresh air, and that is not necessarily inconsistent with the continued existence of dust. There is no provision for removing the dust, nor do we assume that it is practicable to do so, but we are bound to presume, in face of the legislative requirement, that sprinkling is practicable and efficient. The complaint alleges that by reason of the negligent failure to sprinkle the roadways and entries "they had been permitted to remain and be so dry that the air therein became and was so charged with dust as to render said roadways and entries dangerous for use, and likely to create, at any time, what is known as a 'dust explosion,' " and

that the concussion and fire from the blasting, acting upon this dust-charged air, caused the explosion of the dust, and that the explosion was caused by this neglect. Here is a charge not only of negligence, but that such negligence was the proximate cause of the injury. Even if it were conceded that the sprinkling is a part of the provision for ventilation, still, if the neglect of this duty was the proximate cause of the explosion, a cause of action would be stated. As we read the clause, however, it is a distinct statutory duty, disconnected from the subject of ventilation proper, and the more is this true under a complaint, which alleges that such a condition is in itself dangerous. We must assume that the legislature so viewed it, and had a purpose in view in enacting the statute, and that the purpose was to provide against this particular element of danger. Certainly it is as specifically enjoined to be done as any other thing embraced in the statute. It is required, irrespective of the subject of ventilation; and this being so, it was manifestly enacted for the benefit of appellee and others employed in the mine. That is the test. *Indiana, etc., Coal Co. v. Neal, supra,* and cases cited. The case last cited lends no support to the contention of appellant, that the sprinkling clause has no application.

It is next urged that neither paragraph of complaint is sufficient, because it does not show that the failure to sprinkle the mine was the proximate cause of the explosion which caused the injury to appellee. It is expressly averred in the first paragraph "that if said defendant company had performed its duty, by regularly and thoroughly sprinkling said dust on and before the date of the explosion, the accident, and injuries herein complained of would not and could not have occurred, and that they did occur solely and proximately by reason of its neglect in that behalf." The fact could hardly be more directly stated.

It is next urged that if the servant, with full knowledge of the facts, and understanding the risks occasioned thereby,

in the absence of any promise by the master to remedy
4.    them, consents to remain in the employ of the master,
he voluntarily incurs such increased risks.    The
rule is, that where there is a neglect of a statutory duty,
the assumption of risk does not apply by continuing in the
service, and it is not necessary to negative knowledge of
the danger. *Inland Steel Co.* v. *Yedinak* (1909), 172 Ind.
423; *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105;
*Fort Wayne, etc., Traction Co.* v. *Roudebush* (1909), 173 Ind.
57; *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599;
*Miami Coal Co.* v. *Kane* (1910), 45 Ind. App. 391; *Cook* v.
*Ormsby* (1910), 45 Ind. App. 352; *Chandler Coal Co.* v. *Sams*
(1908), 170 Ind. 623; *Chicago, etc., R. Co.* v. *Lawrence* (1907),
169 Ind. 319; *Green* v. *American Car, etc., Co.* (1904), 163
Ind. 135; *Hymera Coal Mining Co.* v. *Mahan* (1909), 44 Ind.
App. 583; *Nickey* v. *Dougan* (1905), 34 Ind. App. 601;
*American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644.

It is averred that in mining coal, blasting is necessary,
and that it is the customary, well-recognized and well-known
practice, and that such practice was so acted upon by
5.    appellant and the miners, and that the accident would
not and could not have occurred but for the dust-
laden air, which exploded in the usual course of the business
of mining, hence the dust must be regarded as the efficient
or proximate cause of the explosion and injury. *Chicago,
etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, and cases cited.

It is the contention of appellant that the injury did not
occur from an explosion of coal dust, but from the use of
excessive quantities of blasting powder in too quick suc-
cession, and that there can be no such thing as an explosion
of coal dust, and that there is an entire lack of evidence to
support the averments of the complaint.    As we shall here-
after show, the evidence is not in the record, and the jury
found that the injury was caused by an explosion of dust.

An attack is made upon certain instructions in the case.
Such attack is sought to be met by appellee, on the ground

that the instructions are not in the record, the spe-
6. cific objection being that the instructions are sought
to be brought into the record without a bill of excep-
tions, and that the instructions claimed to have been given
are not signed by the judge, as required by the statute,
when that means is employed in bringing instructions into
the record. The record discloses that at the close of the
series of instructions requested by plaintiff, there is a memo-
randum signed by the judge and dated December 31, 1908,
showing that the court had determined, before instructing
the jury, to give each of the instructions requested by
plaintiff, numbered from one to twenty-three, inclusive, and
this memorandum is followed by a formal memorandum,
signed by defendant's attorneys, and dated December 31,
1908, excepting to the giving of each of the instructions
numbered from one to twenty-three, inclusive. At the
close of the instructions requested by defendant is a memo-
randum in writing signed by the judge, and dated Decem-
ber 31, 1908, showing that he had determined before in-
structing the jury to give all of the instructions except
fourteen, twenty-two, twenty-two and one-half and twenty-
three, and following this is a formal exception by defendant
to the refusal to give each of those instructions, signed by
its attorneys, and dated December 31, 1908. Instructions
one and two, given by the court on its own motion, are
signed by the judge. This was a full compliance with
the statute (§561 Burns 1908, Acts 1907 p. 652), and the
instructions are properly in the record.

It is also insisted by appellee that the evidence is not
in the record, and hence the instructions cannot be con-
sidered. This insistence is based on the fact that
7. the motion for a new trial was overruled on March
13, 1909, and 160 days were given in which to pre-
pare and file a bill of exceptions. It is claimed that before
the expiration of the 160 days, in vacation, appellant pro-
cured an extension of time to 190 days from March 13,

1909. It is contended that, under §661 Burns 1908, Acts 1905 p. 45, providing that "if the extension of time is granted by the judge in vacation, such action may be indicated by a recital in the bill of exceptions itself, but if such extension is granted in term time, the same may be indicated by an order of court, duly entered on the order-book," such an extension, procured in vacation, can be shown only by the bill. This language is insisted upon by appellee as exclusive in either case. There was a vacation order-book entry, signed by the judge, showing the granting of the extension. On September 18, 1909, there was an order-book entry reciting the tender of the bill of exceptions "within the time heretofore allowed by the court, and as extended by the judge in vacation," and reciting the signing and filing of the bill. The bill itself recites that "on September 18, 1909, and being within the time heretofore allowed, as extended by the order of the court, defendant in this cause, the Vandalia Coal Company, here tenders this bill of exceptions containing all the evidence in this cause," etc. The bill is signed by the judge, and was ordered made a part of the record in the cause that day. Its filing on the same day is shown by the record. Its identity is certified by the clerk.

Prior to the enactment of §661, *supra*, no extension was authorized, and the recital in a bill of exceptions as

8.  to the time given in the first instance for filing was insufficient, as that fact could only be shown by an order-book entry. *Rose* v. *State* (1909), 171 Ind. 662.

The provision is a radical departure from the recognized practice, and grows out of the necessity for it in case of an extension of time in vacation; but as an innovation

7.  upon the statute, it will not be carried beyond the necessity from which it arises. In all other cases, the time for filing bills of exceptions must still be shown by the order-book. The language—"may be shown by a recital in the bill itself"—in case of an extension in vaca-

tion, and—"in term may be indicated by an order of court"—creates a new and permissive right, and the statuatory direction must be followed. The reason is, that 9. there is no authority in such cases for order-book entries of the judge's action in vacation. The court can only speak in the manner pointed out by statute, and that is, so far as the vacation extension is concerned, 7. by a recital in the bill itself, while as to term extensions the order-book must speak. If the vacation order cannot be looked to, then there is no order-book entry, and nothing in the bill extending the time. In the term entry and in the bill itself it is recited that the time had been extended, but for how long does not appear. The recital is of no force. *Wood* v. *Ohio Falls Car Co.* (1894), 136 Ind. 598; *Orton* v. *Tilden* (1887), 110 Ind. 131.

The right to obtain extensions for filing bills of exceptions in vacation, or in term, is purely statutory, and the statute must be complied with by one who seeks to make avail of it. There may be as much reason that a bill of exceptions should recite the fact of the giving of time in which to file it, as that the order-book entry should show such fact; but it has been uniformly held that it could not be so done. And so here, the statute, marking a distinction between term and vacation extensions, and creating a new, permissive right, should receive a construction in harmony with the recognized practice, and require the vacation proceedings to be shown by the bill. We think that is the meaning and intent of the statute. With the evidence 10. not in the record, we are precluded from considering the instructions, unless an instruction is radically wrong under any evidence admissible under the issues. *Chicago, etc., R. Co.* v. *Fretz* (1910), 173 Ind. 519; *Cleveland, etc., R. Co.* v. *Rudy* (1909), 173 Ind. 181.

Instruction twenty-three is as follows: "If you find for the plaintiff in this case, it will be your duty to award him

such damages as will fairly and reasonably compensate him for the injuries received, if any, which he has sustained. In determining the amount of damages, if any, to which plaintiff would be entitled, as flowing proximately from the accident complained of, it is your duty to take into consideration his age, his condition in life, the physical pain and mental anguish, if any, which he suffered, decide whether his injuries are temporary or permanent, and whether any deformity, marks or scars, resulted from the explosion; whether his earning capacity has been reduced, and what effect, if any, his injuries will have on his earning capacity in the future; what moneys, if any, he may have been compelled to expend in medical treatment, medicine and nursing; what wages, if any, he has lost by reason of his injuries, and, in short, to award him such an amount, if he is entitled to recover, as will reasonably and fairly compensate him for the injuries and damages, if any, which he has sustained."

Two objections are urged to this instruction, which was the only one given upon the subject of fixing the damages. There is no other instruction specifically restricting the jury in its consideration to the evidence upon that subject. The first objection is that the instruction does not confine the jury to the evidence in estimating the damages. With one possible exception, hereafter noticed, the instruction states the proper elements of damages. An instruction is sufficient, in that particular, that tells the jury, directly, or in substance, that it must determine from the evidence any question submitted to it. *Aspy* v. *Botkins* (1903), 160 Ind. 170; *Johnson* v. *Gebhauer* (1902), 159 Ind. 271; *Harness* v. *Steele* (1902), 159 Ind. 286; *Broadstreet* v. *Hall* (1907), 168 Ind. 192, 10 L. R. A. (N. S.) 933, 120 Am. St. 356.

In this case there are instructions directing the jury generally that it must determine the issues upon a preponderance of the evidence. Instructions that have been held

harmful, and that constitute reversible error in that particular, were affirmative instructions, directing the jury to take into consideration all the facts and circumstances, and the like expressions, or including improper elements, without limiting the inquiry to the evidence, or to the evidence upon a particular point. See *Chicago, etc., R. Co.* v. *Fretz* (1910), 173 Ind. 519; *Chicago, etc., R. Co.* v. *Sykes* (1880), 96 Ill. 162; *Monongahela River, etc., Co.* v. *Hardsaw* (1907), 169 Ind. 147.

The following cases hold that an instruction is not harmful for lack of specific direction limiting the inquiry to the evidence: *Thomas Madden, Son & Co.* v. *Wilcox* (1910), 174 Ind. 657; *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467; *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409; *Poland* v. *Miller* (1884), 95 Ind. 387, 48 Am. Rep. 730; *Pittsburgh, etc., R. Co.* v. *Sponier* (1882), 85 Ind. 165; *City of Indianapolis* v. *Scott* (1880), 72 Ind. 196.

In the case last cited it appears that the instructions were not all in the record, but the opinion is grounded upon the language that "you [the jury] may find," which was held fairly to imply a direction to find from the evidence, and the cases of *Poland* v. *Miller, supra, Louisville, etc., R. Co.* v. *Falvey, supra, Ohio, etc., R. Co.* v. *Stein, supra, Pittsburgh, etc., R. Co.* v. *Collins, supra,* and *Thomas Madden, Son & Co.* v. *Wilcox, supra,* are founded on the same implication. Conceding that damages can lawfully be assessed only under the evidence, if the instruction states the correct elements of damages, and there is evidence upon all the elements stated, no harm could be done by the failure of the instructions to restrict the consideration to the evidence. *Rice* v. *City of Des Moines* (1875), 40 Iowa 638.

The instruction before us falls within the last class, and does not constitute reversible error, unless it is objectionable within that rule by reason of the language

instructing the jury to take into consideration "his
condition in life," which is the second objection

12. urged. It must be conceded that if "his condition in
life" refers to anything other than his physical condition
arising from the injury, the instruction would be bad. The
worldly condition of parties, such as poverty or riches,
whether possessed of property, whether married or single,
or having a family, large or small, the number and ages
of the members thereof, the standing of the parties, whether
dependent upon self-support, etc., should not be considered.
*Pennsylvania Co.* v. *Roy* (1880), 102 U. S. 451, 26 L. Ed.
141; *National Biscuit Co.* v. *Nolan* (1905), 138 Fed. 6, 70
C. C. A. 436; *Alabama, etc., R. Co.* v. *Carroll* (1898); 84
Fed. 772, 28 C. C. A. 207; *Union Pac. R. Co.* v. *Hammerlund*
(1905), 70 Kan. 888, 79 Pac. 152; *Maynard* v. *Oregon R.
Co.* (1904), 46 Ore. 15, 78 Pac. 983, 68 L. R. A. 477; *Nutt*
v. *Southern Pac. Co.* (1894), 25 Ore. 291, 35 Pac. 653; *St.
Louis, etc., R. Co.* v. *Adams* (1905), 74 Ark. 326, 85 S. W.
768, 86 S. W. 287, 109 Am. St. 85; *International, etc., R.
Co.* v. *Goswick* (1905), 98 Tex. 477, 85 S. W. 785; *Davis* v.
*Kornman* (1904), 141 Ala. 479, 37 South. 89; *Moody* v.
*Osgood* (1868), 50 Barb. 628; *Macon, etc., R. Co.* v. *Winn*
(1858), 26 Ga. 250; *Sun Life Assur. Co.* v. *Bailey* (1903),
101 Va. 443, 44 S. E. 692.

These and similar conditions are too likely to arouse the
sympathy of juries to a degree beyond awarding compensa-
tion. It was held in the case of *McCarthy* v. *Philadelphia,
etc., R. Co.* (1905), 211 Pa. St. 193, 60 Atl. 778, that evidence
as to the occupation and compensation, and that a party
is not able to follow his or her occupation, does not fall
within the rule that rejects evidence of worldly condition.

Juries are allowed a sound discretion in assessing dam-
ages, and while the courts may instruct as to the

13. elements of damages, they cannot be defined and calcu-
lated with mathematical certainty. *Railroad Co.* v.
*Spence* (1893), 93 Tenn. 173, 23 S. W. 211, 42 Am. St. 907
and notes.

The elements of mental anguish cannot be specialized or calculated, and hence must be left to the sound discretion of a jury. The damages must be those arising from pecuniary loss, in which physical condition and earning capacity at the time of the injury, and the effect of the injury upon such capacity, are necessarily involved, together with physical pain and mental anguish arising from the physical injury, and expenses incurred in treatment, nursing, etc. (*Pittsburgh, etc., R. Co.* v. *Montgomery* [1898], 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 300), and not those arising from mental anguish from apprehensions (*Maynard* v. *Oregon R. Co., supra*). They cannot be fixed in disregard of established rules of law. *Chicago, etc., R. Co.* v. *Fretz, supra; Collins* v. *Leafey* (1889), 124 Pa. St. 203, 16 Atl. 765; *International, etc., R. Co.* v. *Ormond* (1884), 62 Tex. 274; *Hawes* v. *Kansas City, etc., Co.* (1890), 103 Mo. 60, 15 S. W. 751.

Any other rule would result in an entirely erroneous basis for the assessment of damages, which is compensation in every case of this class. There can be but one rule. *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360; *Shea* v. *Potrero, etc., R. Co.* (1872), 44 Cal. 414; *Malone* v. *Hawley* (1873), 46 Cal. 409; *Hinds* v. *City of Marshall* (1886), 22 Mo. App. 208.

It is quite clear that evidence would not have been admissible to show anything as to appellee's condition except his physical condition occasioned by the injury. In the absence of the evidence from the record, it may be that the evidence was restricted to his physical condition, or that the jury was informed by the court, so that it could not have understood the phrase "his condition in life" in any other sense than his physical condition, arising from the injury, and with this state of the record, we are bound to assume that the instruction was applicable to the evidence, and are required to indulge every reasonable presumption in favor of the

instruction. *Farris* v. *State* (1901), 156 Ind. 224; *Adams* v. *Vanderbeck* (1897), 148 Ind. 92, 62 Am. St. 497; *Reinhold* v. *State* (1892), 130 Ind. 467.

The phrase "condition in life" is susceptible of such divergent views by different persons, and such different understandings of meaning, that it ought not be used in 12. any case, and would result in a reversal if the evidence were in the record, and should fail to show that it could only have referred to physical condition, or that the jury was so admonished. Other questions are sought to be presented upon the evidence, which we are precluded from considering by reason of the state of the record.

The complaint alleges that appellee was badly burned about his hands, head, arms and body; that he was injured internally by inhaling the gases, smoke and dust; 17. that he is permanently injured; that he suffered, and still suffers, great bodily pain and mental anguish; that he was unable to work for a period of many months, during which time he could have earned $5 or $6 a day; and that he expended $200 for medicine, medical aid and nursing. We cannot say, in the absence of the evidence, that the damages assessed are excessive, or such as to indicate that the jury was influenced by prejudice, partiality or corruption.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

MYERS, C. J.—The learned counsel for appellant, upon petition for rehearing, urge that we were in error in holding that the judgment in the case is shown by the record 18. to be based upon the first paragraph of complaint, for which reason we did not examine the second paragraph. In this contention counsel are clearly in error. While it is found by the jury that certain illegal drillings had been made, by which is meant drillings past the end of the cutting or "loose end," as prohibited by §8587 Burns 1908,

Acts 1905 p. 65, §17, then in force, the jury also found that none of these drillings were fired before the explosion in which appellee was injured, so that so far as the drillings are concerned, those that were fired are found to be legal drillings, under the allegations of the first paragraph of the complaint.

It is argued that because in the second paragraph it is alleged that the firing of illegal drillings is coupled with alleged negligence in not sprinkling, and consequent dust explosions, it cannot be said that the second paragraph need not be considered. When, however, as here, the second paragraph alleges negligence in failing to sprinkle, and consequent dust explosion from firing illegal drillings, and the jury find that no illegal drillings were fired before the explosion, and that the holes fired were not overcharged, that the explosion was a dust explosion, and that the failure to sprinkle was the cause of the explosion, it is certainly clear that it appears from the record that the judgment rests wholly on the first paragraph.

We have also reëxamined the proposition urged by appellant, that the provision for sprinkling mines is a part of the provision for ventilation. Suppose the proposition be 19. conceded. It is then certainly an explicit requirement in connection with ventilation, which being neglected, and injury arises directly from the condition created or suffered, a right of action accrues. That this is an independent provision is made quite clear from the provisions of section twelve of the act of 1907 (Acts 1907 p. 347, §8613 Burns 1908), which gives the inspector power to order sprinkling, and makes it unlawful after notice to operate without sprinkling. If the case of *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458, relied on by appellant, had been based on failure to provide the ventilating doors, we should have had a case similar to this one, for if it be considered that the sprinkling clause is a part of the ventilating provision, and the precaution is neglected, it makes a cause of action, if it is the proximate cause of the injury,

because if it is a part of the ventilating system, and necessary to ventilation, then a necessary part of the ventilation is neglected. The statute (Acts 1905 p. 65, §11, §8579 Burns 1908) is aimed at protection, and is explicit in its requirement that "in case the roadways or entries * * * are so dry that the air becomes charged with dust, such roadways or entries shall be regularly and thoroughly sprinkled."

Whether we say that the sprinkling is required because it is necessary to ventilation, or because without it the conditions become dangerous, the menace to health and safety is the same, and it is that which the law seeks to minimize. The duty is one imposed primarily upon the owner or operator, and the duty is imposed upon the inspector to see that the specific provision is carried out, but it does not relieve the operator who neglects this duty, that the inspector has failed to require it. It is made no less the duty of the owner because the inspector is required to see to its discharge. Whom is it designed to protect? Upon appellant's own theory that it is part of the ventilating system, it is clearly to protect the health and lives of miners, either from possible dust explosions, or by furnishing to them untainted air; yet the complaint alleges, and the jury found that there is a liability to dust explosions, and the jury found that dust explosion caused the injury, and that the sprinkling was neglected. We cannot perceive that appellant's position lends any support to its contention.

It is urged also that the court was overly technical in holding that the bill of exceptions containing the evidence is not in the record. This is the first time the court 7. has been called upon to construe the act of 1905 (Acts 1905 p. 45, §661 Burns 1908), and it attempted to give it the construction that seemed most nearly in harmony with the established practice. It is not the desire of the court to dispose of any case, or any point in a case, on technical grounds, preferring to determine every case, as well as every point in a case, upon its merits; but it is constantly

confronted with conditions of records that cannot be ignored, if an established practice is to be recognized, and being a new question we have again gone carefully into it. It must be borne in mind that a bill of exceptions 20. was unknown at common law, and is wholly a creation of statute, first enacted in 1285 in the reign of Edward I. Stat. at Large (Pickering's ed.) p. 206. It was held in the case of *Firestone* v. *Firestone* (1881), 78 Ind. 534, that where a bill of exceptions was presented to the 7. judge, who failed to sign it, but the paper was filed, and the judge thereafter signed it, and recited that he had intended to, and supposed he had signed it, the bill was not in the record, so strictly has the rule been adhered to. When a court is in session, it speaks by its order-book, or the record. *Backer* v. *Eble* (1896), 144 Ind. 287; *Mitchell* v. *St. John* (1884), 98 Ind. 598; *Passwater* v. *Edwards* (1873), 44 Ind. 343.

In vacation the judge speaks as the statute authorizes, or as necessarily authorized by implication. *State* v. 9. *Hindman* (1903), 159 Ind. 586; *Firestone* v. *Firestone, supra; Newman* v. *Hammond* (1874), 46 Ind. 119; *Ferger* v. *Wesler* (1871), 35 Ind. 53.

Under the recognized practice prior to the act of 1905, the time given for the filing of bills of exceptions beyond the term could be shown only by an order-book entry. There 7. was certainly as much reason for holding that the time given for filing bills of exceptions might be shown by the bill itself as for holding that it could be shown by the record only, but the common-law fiction, that all matters in a case were closed with the term, was adhered to, by which everything done related to the term, and the statutory authority for granting time for filing bills of exception beyond the term was, to that extent, the extension of the term, so that when we come to the extension act of 1905, *supra*, we are confronted with the practice that still requires the original granting of time beyond the term to be shown by the order-book, and

forbidding the granting to be shown in the bill, and there was therefore no authority except the statute for obtaining an extension in vacation, nor any other method of showing it than the statutory method. Appellant's contention that the words, "if the extension of time is granted by the judge in vacation, such action may be indicated by a recital in the bill of exceptions itself, but if such extension is granted in term time, the same may be indicated by an order of court," etc., would necessarily result in our holding that the extension, whether in vacation or in term, may be shown by the bill, or the order-book; that is, that two ways are provided in either case. The language would imply one as much as the other, and with as much reason. It is urged that as permission is given to procure extension, all that is necessary to give the statute effect is implied, and that the order-book entry is simply in aid of the statute. The statute authorizes no order-book entry in vacation, and even though the clerk made and the judge signed a record of the proceeding in vacation, has it any force? If so, it is because of necessary implication. If no entry is made in vacation, how shall the record speak? It could not be cured, or supplemented, by a *nunc pro tunc* entry, for no record was authorized in the first instance, nor could the court or the clerk be required to make one.

Suppose again, that the statute were silent as to the manner of showing an extension, could it be claimed that the extension could be shown by the bill? And suppose, further, that the extension for filing did not reach to a time in term, so that the order for the extension could be shown by an order-book entry, before, or at the time of filing, is it not quite certain that the bill could not get into the record? As the statute reads, with no authority for a judge in vacation to make records, or cause them to be made, was it not the intention to require the judge in vacation to speak by the bill itself, as the most formal and

solemn manner of his acting, and that the legislature, with knowledge of the practice with respect to bills of exception, had in mind to authorize the judge in vacation to speak by the bill, for want of authority to speak otherwise, and in term to speak by the record, as in the nearest conformity to the established practice. True, the legislature might have used the words "must be indicated by a recital in the bill," but the enactment was made with reference to the existing practice, which precluded such showing by the bill, and was only the authorization of that which was previously unauthorized, and required the judge in vacation to speak by the bill, for the reason that it is the very matter in hand, and as to which the judge is required to speak.

Suppose the bill of exceptions should show the grant of an extension, and a record entry should show its filing beyond that time, without any showing as to time of presentation, and a vacation entry should show an extension for a different time, and a filing within that time, is it not clear that the bill of exceptions would govern, and the bill not be in the record?

The nearest analogy upon the question is presented by those cases that have held that the filing of a bill of exceptions may be shown by a vacation entry, but the distinction is that the filing of a bill of exceptions is the combined action of the party and the clerk, while granting time for filing is a judicial act. The clerical act of filing may be shown therefore in such manner as the clerk sees fit. He may show it by an entry on the order-book, or in any other entry he may choose to make, or in his certificate, because it is a purely clerical act. His duty ceases in that respect with the filing. No case has ever held, or intimated, that such record or entry as a clerk may make for his own convenience is a judicial record. The clerk's entries in vacation are the acts of neither the court nor the judge, and we know of no authority for vacation entries, except the action of judges in vacation in relation to decedents' estates (§2726 Burns 1908, §2219 R. S. 1881),

and the record authorized in probating wills (§3145 Burns 1908, §2587 R. S. 1881). Even in case of letters testamentary, or of administration, the approval of the court in term is requisite before a record is required, or becomes of any force. §2760 Burns 1908, §2243 R. S. 1881.

At common law, after the enactment of the statute of Westminster, A. D., 1285, when bills of exception were first authorized, the bill spoke for itself in term, embracing

7. matters not otherwise in the record, and there was no need that the record should grant time, as is yet true respecting bills taken in term, but when time is granted beyond the term, and to that extent extending the term, the established practice requires the record to show it, because it is part of the term's proceedings; but when under this statute an extension is obtained out of term, the rational method is to show it by the bill. This action is clearly not an extension of the term, but is the conferring of a new right out of term.

If appellant's contention is right, the extension of time in vacation may be shown either by an entry in the order-book, or by a recital in the bill, and if the extension is in term it may be shown by either the bill or the record entry. If this is true, it strikes down our practice as to the requirement that grants of time must be shown by the order-book. Suppose the statute were silent as to the manner of showing the extension either in term or in vacation, would we not conclude that in analogy to the established practice the extension in term should be shown by the record, and that the bill of exceptions would have to show what was done out of term, for the reason that the very office of a bill of exceptions is to show that which cannot otherwise appear?

It is urged that it is a remedial statute, and should be liberally construed. That is true, but that does not mean nor imply that it should be extended beyond the

24. necessity of the accomplishment of the remedy sought to be given. A remedial statute will not be extended

beyond the spirit and intention thereof, even though it be within the letter. 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §585.

The only remedy needed, and we must assume the one intended, was to provide for extension of time, and proper authentication of the fact. It is argued that if the extension is granted in vacation upon an oral application and oral proof, and no record is made, and the judge granting the extension dies before the bill is presented or signed, his successor cannot be apprised of the extension, and that this possible result should be guarded against by an entry, and that this fact enforces the reason for the practice of showing the extension by the record. We are not prepared to assent to the proposition that extensions may be applied for orally, and granted orally, and without notice. When a judgment *is* entered, and time is given beyond the term to file bills of exception, rights become vested and fixed, and should be changed upon notice only, and an opportunity to be heard and to question the existence of the facts which alone authorize an extension. *Johnson* v. *Gebhauer* (1902), 159 Ind. 271.

The application should be so formally made that it, together with the action of the court thereon, will appear from the papers themselves, so that the condition counsel suggest could not arise, for the reason that a fact so important to the rights of parties should not be so loosely preserved. If it were true that an application could be made and granted orally, it would certainly be an unsafe practice, while a written application, and an indorsement on the application, or other formal statement by the court, would preserve the evidence of the fact so that it might be incorporated in the bill of exceptions when prepared, the very office of which is to show something that cannot otherwise appear, and at a time when the court does not speak or act, but the judge does. In the case of *Passwater* v.

*Edwards, supra,* the court, treating a judgment as having been pronounced in term, held that it could not be spread on the order-book in vacation, so as to have any force. *Backer* v. *Eble, supra; Mitchell* v. *St. John, supra.*

A new trial as of right cannot be granted in vacation. *Ferger* v. *Wesler, supra.* Under the former statute, a judge could not appoint a receiver, or the clerk approve a 26. receiver's bond in vacation (*Newman* v. *Hammond, supra*), and a recognizance forfeited in vacation was void (*State* v. *Hindman, supra*).

It is true that these cases are grounded upon want of jurisdiction of the judge to act in vacation; while in this case there is authority to act in vacation. But if the doctrine of implication, that everything necessary to carry into effect a thing authorized, or partially done, could be the rule, those cases furnished the necessity for its application. In some of the cases the clerk made an entry in vacation of what had been done in term, so that the doctrine of implication cannot be invoked to authorize the entry 7. in vacation. The statute grants a new right, and those who wish to make avail of a statutory right must bring themselves within the statute, which is, in effect, that when the extension is procured in vacation such fact may be shown by the bill, for the lack of any other known or authorized method of showing it. We still believe that our original decision established the intended and better practice of adhering to the old rule of requiring action by the court in term to be shown by the order-book, and action taken by the judge in vacation in extending the time to file bills of exceptions to be shown by the bill, thus retaining the former practice, and enlarging it to meet the conditions presented in cases of extensions in vacation, and enabling that to be shown by the bill itself, which could not otherwise be shown.

It is alleged in the complaint that appellee was enveloped in a sheet of flame, and was badly burned about the head,

hands, arms and body; that he was injured internally by inhaling the gases; that he is permanently injured, and has suffered and still suffers great bodily pain and mental anguish.

The phrase "condition in life," as used in the twenty-third instruction, and in the connection, and with the qualifications used, has not such a definite legal meaning that it may not be applied to appellee's physical condition arising from the injury. We fully recognize the general rule that where it is shown on appeal that the trial court erred in some ruling or decision, the error will be presumed to be harmful, and the burden is not upon the party claiming to be aggrieved to show that it is harmful, but upon the opposite party to show by the record that the error was harmless. The qualification of the rule is in its application, and the fact that the whole record may be examined to disclose whether it is a harmful, or a harmless error. The twenty-third instruction is not as carefully drawn as it might be, and is perhaps open to grammatical criticism, but further consideration forces the conviction that, taken as a whole, in the absence of the evidence, it cannot be said to be harmful. While the phrase "condition in life" is in a position in a clause where it is possible to be construed as being without qualification, it occurs in a long sentence, and while it instructs "that it is your duty to take into consideration his age, and his condition in life," it is manifest that the question of his age was material as to his expectancy, and the probable duration of his earning capacity, "as the result of the explosion," and had no relevancy to, or connection with, his condition in life in any other sense than his condition "as the result of the explosion," which last clause fairly qualifies all that precedes it in the sentence. While the instruction enumerates some of the elements of damages, it does not enumerate all the elements alleged in the complaint; for example, internal injuries from

"inhaling the gases," which may have been quite as serious as any or all others, so that the physical condition in which he was left, occasioned by the explosion, was a proper element of damages. The phrase "condition in life" is used in connection with the sentence, "in determining the amount of damages, if any, to which the plaintiff would be entitled, as flowing proximately from the accident complained of," and certainly his position in life, socially or otherwise, could not be said to be in any way related to damages flowing proximately from the injury, while his "condition in life," his "plight," his state as to "soundness or health," as a result of the explosion would be clearly understood. If he were in a social scale of a minor grade, the instruction could not have been harmful to appellant, and taking the whole instruction together, the damages which he is entitled to recover are restricted to "the injuries received, if any," to "those flowing proximately from the accident complained of," to such as are "the result of the explosion," and "by reason of his injuries," and finally "to such an amount, if he is entitled to recover, as will reasonably and fairly compensate him for the injuries, and damages, if any, which he has sustained." In the absence of the evidence it must be manifest that we are far within the rule in holding that we cannot say, as a matter of law, that the instruction is erroneous, and that it does not fall within the rule invoked by appellant, or that it gave an unwarranted latitude to the jury in the assessment of damages.

It is urged that even though the evidence is not in the record, instructions three and twelve are erroneous.

Instruction three is as follows: "If defendant puts forth the claim that the injuries sustained by plaintiff were caused by his own contributory negligence, then I instruct you that the burden of proving such contributory negligence, if any existed, rests upon the defendant, and before such defense can avail the defendant, it must be established by the preponderance of the evi-

dence." It is claimed that this instruction leaves it to the jury to determine, as a question of law, whether contributory negligence is in issue in the case, and that it is error to instruct that the preponderance of evidence to establish contributory negligence must be introduced by the defendant. Defendant is correct as to both propositions, but such is not the force of the instruction. It does no more than inform the jury that if a defense of contributory negligence is claimed, the burden is on defendant to prove it, and that it must be established by the preponderance of the evidence on that point. The instruction does not fall within the ban of the instruction in the case of *Indianapolis St. R. Co.* v. *Taylor* (1902), 158 Ind. 274, for in that case the instruction first informed the jury that if it affirmatively appeared from the evidence that plaintiff did not use due care to discover the approach of cars, or, in other words, if he was contributorily negligent, he could not recover, but the court added: "The burden of proving contributory negligence * * * rests upon the defendant." The instruction was held to be misleading, in the fact of first informing the jury that if contributory negligence appear from the evidence there could be no recovery, and then qualifying it in such manner as to lead the jury to infer that it must be shown by the evidence introduced by defendant. In that case an instruction quite similar to the one before us was approved. Whether there was a claim of contributory negligence was a question of fact, which if urged upon the jury had coupled with it the law that the burden of proving it was upon defendant, and must be established by a preponderance of the evidence in the case, and not by a preponderance of the evidence introduced by defendant. The defense was not, and need not have been specially pleaded, so that whether the defense of contributory negligence was claimed, was a question of fact, and not of law. The jury could not have been mislead into believing that it must be established by the evidence intro-

duced by defendant. *New Castle Bridge Co.* v. *Doty* (1907), 168 Ind. 259; *Chicago, etc.; R. C.* v. *Vandenburg* (1905), 164 Ind. 470; *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489.

Another instruction informed the jury that if it should "find that plaintiff was free from contributory negligence, and was in the exercise of care and diligence for his own safety, he would be entitled to recover, if the material allegations of his complaint were proved." The two instructions taken together correctly state the law.

The twelfth instruction was as follows: "Of course, the servant must use his faculties in ascertaining whether danger actually exists, if it is apparent, or open to the view. But he is not bound to be looking out, or searching, for latent or hidden dangers, nor is he charged with knowledge of the dangerous conditions of the place in which he is required to work, if it is the master's duty to make it safe, for the servant is justified in assuming, within reasonable limits, that the master has performed his duty, and he is also justified in acting upon that assumption, within reasonable limits." It is claimed that this instruction leaves to the jury the determination of a question of law, and that its effect is to make the master an insurer of an absolutely safe place to work, whereas he is required to exercise only ordinary care in this regard. It will be noted that this instruction does not charge that it is the master's duty to make the place safe, nor is there any other instruction so charging. The instruction is a general statement as to the duty and rights of the servant, even if a duty is imposed on the master, and if appellant had desired a more definite instruction, it should have tendered one. As it stands, it does not leave it to the jury to determine the duty of the master as a matter of law, and even though it is not the master's duty to make a place safe, the instruction was not harmful to appellant, because it does not so charge. If, as the rule is, he is only required to use ordinary care to

make it safe, it will be seen that if the obligations of the servant are as broad as stated, where there would be a duty to make safe, as appellant contends, the instruction means that the servant's obligations and rights in law are no less and no greater than in case of the requirement of ordinary care on the part of the master, so that in its last analysis the instruction is more favorable to appellant than to appellee. The duty here alleged to have been neglected is that of the statutory duty of sprinkling, by reason of which the injury occurred, and as this was the master's duty, he is not harmed by an instruction which leaves the duty a conditional one, when it is in law a positive one.

Complaint is also made of the refusal to give instruction fourteen tendered by appellant. Said instruction was addressed to the issues presented by the second paragraph of the complaint, and as the judgment rests upon the first paragraph, as we have pointed out, the refusal, if error, was harmless.

The petition for a rehearing is overruled.