Debra A. BARROW, Martha Barrow,
Defendants-Appellants,

v.

Leslie J. TALBOTT, Jackson R. Talbott,
Plaintiffs-Appellees.

No. 3–779A210.

Court of Appeals of Indiana,
Third District.

Feb. 25, 1981.

Rehearing Denied May 6, 1981.

Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for defendants-appellants.

Gary M. Cappelli, Grossman, Cappelli, Boeglin & Gehring, Fort Wayne, for plaintiffs-appellees.

HOFFMAN, Presiding Judge.

This is an appeal from an action for personal injuries brought by plaintiffs-appellees Leslie and Jackson Talbott against defendants-appellants Debra and Martha Barrow[1] arising out of a vehicular accident in which Leslie was a guest passenger. The jury awarded Leslie $80,000 in compensatory damages and $3,850 to Jackson for medical expenses incurred by him as a result of his daughter's injuries.

At approximately 9:00 P. M. on July 18, 1975 Debra, accompanied by Leslie, was operating a 1965 Buick station wagon on Foster Park Drive which runs through a municipal park located in Fort Wayne, Indiana. The road is narrow and lined with trees on both sides. While enroute to a friend's apartment, they approached a slow-moving vehicle driven by Sammy Wilson. After following this vehicle for a period of time Debra became angry at its slow rate of speed. When the cars entered a portion of the roadway which curved around a golf course, Debra began swerving her car into the oncoming lane. Leslie pleaded with Debra to stop weaving but to no avail. As the vehicles entered another straightaway Wilson pulled to the edge of the road. At this point Debra accelerated and shot ahead. Then she resumed her weaving pattern when suddenly she lost control. Her car careened into a tree, the jolt causing Leslie's face to strike the windshield.

Debra told the investigating officer, Policewoman Mosley that she had been traveling 50 mph when the accident occurred. Later she recanted, stating that her speed could not have been more than 25 or 30 mph. There was conflicting evidence as to whether the speed limit in the area of the collision was 15 or 25 mph.

The issues raised by this appeal include:

(1) whether there was sufficient evidence to support a finding that Debra was guilty of wanton misconduct within the meaning of the Indiana Guest Statute;

(2) whether the damages awarded were excessive;

(3) whether the trial court erred in refusing to give an instruction defining the term "prima facie";

(4) whether the trial court erred by instructing the jury that Debra's conduct was to be judged by an adult standard of care;

(5) whether the trial court erred in permitting evidence concerning Leslie's impecunious financial condition; and

(6) whether the trial court erred in admitting conclusory statements by Leslie into evidence.

The touchstone to be employed in determining liability under the guest statute is well settled. In order to be guilty of wanton misconduct a host-driver must: (1) be conscious of his misconduct; (2) be motivated by a reckless indifference for the safety of his guest; and (3) he must do so knowing his conduct subjects his guest to a probability of injury. *Gibson v. Estate of Holderbaum* (1980), Ind.App., 413 N.E.2d 614; *Brown v. Saucerman* (1957), 237 Ind. 598, 145 N.E.2d 898.

There was testimony that Debra had traversed this particular route on several occasions prior to the mishap. This gives rise to an inference that she was acquainted with the narrowness of the road as well as the fact that it was lined with trees. In light of her familiarity with the vicinity where the accident occurred the jury was entitled to find that once Debra accelerated to 50 mph and passed the Wilson vehicle her resumption of a weaving pattern across the road constituted a consciousness of misconduct.

Reckless indifference is the mental element of a guest statute case and it is commonly shown by the host-driver's disre-

---

1. Martha's liability was predicated solely on the fact that she signed Debra's application for a driver's license thereby agreeing to be responsible, jointly and severally with the applicant, for any injury or damage which the appli-cant may cause by reason of the operation of a motor vehicle, in all cases where the applicant is liable in damages. See IC 1971, 9–1–4–32 (Burns Code Ed.).

gard of his passenger's complaints or warnings about his driving. *Jones v. Motley et al.* (1974), 160 Ind.App. 21, 309 N.E.2d 173; *Schwing v. McKibbin* (1970), 148 Ind.App. 222, 264 N.E.2d 629. Prior to overtaking the Wilson automobile Debra began swerving her car along a winding portion of the road. She was angry at Wilson's slow rate of speed and conducted about eight weaves while trailing him. Frightened, Leslie pleaded with Debra to stop swaying the car but she ignored those protestations remarking that she knew what she was doing and had everything under control. To this rebuff Leslie replied, "Well, then, I will shut my eyes, I won't see what you're doing." From this evidence an inference can be drawn that Debra's only thought upon passing Wilson at a high rate of speed was to vent her anger by swerving again, thus exhibiting reckless indifference to the consequences of her conduct.

The final element requires proof that the host had knowledge of the danger confronting the guest. If circumstances are such that reasonable men would know and conclude their conduct entailed a probability of injury, then the host is chargeable with such knowledge. *Sili v. Vinnedge* (1979), Ind.App., 393 N.E.2d 251. Where the host, after overtaking another car at 50 mph in a 15 mph zone, zigzags several times across a narrow road abutted by trees she is charged with knowledge that her conduct involves a high probability of injury, e. g., losing control of her car and caroming into a tree.

Defendants also assail the judgment below on the grounds that an award of $80,000 to Leslie was excessive. One prong of their challenge is there was insufficient evidence from which the jury could determine that Leslie would incur $5,000 worth of medical expenses for future treatment of her injuries. In addition they claim that the remainder of her award was either motivated by prejudice or else based on conjecture.

Implicit throughout their attack is the erroneous assumption that the jury could itemize these damages in the verdict. The proposed verdict for Leslie was upon a printed form with the identifying information typed. It required an insertion of the total general damages awarded her and the signature of the foreman. The jury filled in the total amount of its award in Leslie's favor. ($80,000). Following this sum it included an asterisk. At the bottom of the form, beneath the signature of the foreman and the date of the verdict, it repeated the asterisk and in longhand made a segregation of the total: "$75,000 for suffering and aggrieved condition of Miss Talbott; $5,000 for future medical services."

It has been decided that when a jury attempts to interpolate something in a verdict about which the jury has no concern, such interpolated matter is mere surplusage and not fatal to a judgment based on that verdict. *Lake Erie, etc., R. Co. v. Halleck* (1922), 78 Ind.App. 495, 136 N.E. 39. Treating gratuitous, explanatory remarks which a jury may append to its general verdict as a special finding of fact or as a guide in determining how the jury may have resolved the factual issues [2] would invite surmise and conjecture and lead to uncertainty and confusion. Where the courts have been confronted with the problem of surplusage it has been easily remedied by eliminating the informal portions when entering judgment. *Pennsylvania R. Co. v. Logansport Logan & Trust Co.* (7th Cir., 1929), 29 F.2d 1. This policy was adhered to by the trial court insofar as it entered judgment in favor of Leslie simply for $80,000. For other cases in which an itemized verdict was held to be surplusage, see *McClain v. Collins* (1955), D.C.App., 117 A.2d 125; *Kagele v. Frederick* (1953), 53 Wash.2d 410, 261 P.2d 699.

Thus the inquiry must be limited to whether a general damage award of $80,000 was excessive. Indiana courts have

---

**2.** In Indiana, special verdicts and interrogatories have been abolished. Ind.Rules of Procedure, Trial Rule 49.

adopted a strict standard of review for appeals predicated upon the excessiveness or insufficiency of awarded damages. A verdict will be reversed only when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed was so small or so great as to indicate that the jury was motivated by prejudice, passion, partiality, corruption or else considered some improper element. *Faulk v. Chandler* (1980), Ind.App., 408 N.E.2d 584. Where the evidence presented is conflicting as to the nature, extent and source of the injury, the jury is in the best position to appraise damages. In such cases, it cannot be said that the verdict returned by the jury was based upon prejudice, passion, partiality, corruption or on the consideration of some improper element. *McNall v. Farmers Ins. Group* (1979), Ind. App., 392 N.E.2d 520.

 On the record herein it does not appear that the jury was prompted by such motives. Accordingly its determination must stand. There was evidence that Leslie suffered ten inches of deep lacerations to the right side of her face which required extensive stitching near her eye, across her chin and on her lips and nose. She underwent corrective surgery to reduce the conspicuousness of the scars but the physician who treated her testified that the degree of prominence remaining after these operations was permanent. Leslie stated she was embarrassed by the scars and that she was teased by boys who called her "scar face."

Other testimony disclosed that Leslie experienced a temporary loss of sensation to the right side of the face. Both Leslie and her mother testified that subsequent to the accident she developed a twitch in her right eye.[3] The impact of the collision also chipped one of her incisors and jarred another one loose. Her dentist testified there was a reasonable scientific certainty that several of her teeth would require future dental care at a cost of $395 per tooth. Finally she sustained a broken nose and disfigurement of her lips.

 Complaint is also made of the failure to give defendants' Instruction No. 10 which would have informed the jury that:

"You are instructed that the word *prima facie*, as used in these instructions, means that something is presumed to be true until the contrary is proved." (Original emphasis.)

The term "prima facie" was used in defendants' Instruction No. 9 which was given by the court. It provides:

"You are instructed that on July 18, 1975, there was in full force and effect an Ordinance of the City of Fort Wayne, Indiana, providing as follows:

'A speed limit of twenty-five miles per hour shall be declared the *prima facie* limit upon all streets and roads in the city park system; provided, that at or near hazardous or congested locations, a speed limit less than that specified in this section may be established, and traffic speed control devices installed, when deemed necessary at the discretion of the department of public parks.'

"Unless you find that a speed limit of less than twenty-five miles per hour had been established along the section of the public road through Foster Park upon which the accident in question occurred, you are

---

3. Defendants characterize the jury's finding that the twitch was caused by injuries received in the wreck as conjectural since Dr. Brucker testified he could only guess that the twitch might have been due to severing a facial nerve. This assertion is misplaced. Causal connection may be proved by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than mere speculation. See generally *Estate of Percy Pendall* (1968), 142 Ind.App. 673, 236 N.E.2d 842; *Kempf v. Himsel* (1951), 121 Ind. App. 488, 98 N.E.2d 200. Although Brucker's testimony lacked any probative value the jury was nonetheless entitled to draw its own opinion from the facts testified to by Leslie and her mother along with other medical testimony that her facial muscles were severed and the nerves therein interrupted. Moreover where an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony is sufficient for the jury to render a verdict, no expert medical testimony being necessary. *Barnett v. Richardson* (1966), Okl., 415 P.2d 987.

instructed that the speed limit upon this section of the road was twenty-five miles per hour."

Since the speed of Debra's vehicle was a material issue at trial, defendants contend they were entitled to advise the jury a presumption arose that the speed limit on the segment of the road where the accident occurred was 25 mph in the absence of evidence establishing a lower one. Due to the failure of the trial court to explain the technical term "prima facie," defendants charge they were denied the full benefit of the presumption because the jury was left with the mistaken impression that it could find, solely on the basis of Policewoman Mosley's testimony, that the speed limit was only 15 mph.

Of course it must be acknowledged that it is error generally for a trial court to refuse to define in its instructions technical and legal phrases in connection with material issues of the lawsuit if properly requested to do so. *Conder v. Hull Lift Truck, Inc.* (1980), Ind.App., 405 N.E.2d 538; *Illinois Cent. Gulf R. Co. v. Parks* (1979), Ind.App., 390 N.E.2d 1073. Moreover, the term "prima facie" is undoubtedly a technical term that may be misunderstood by a jury since it is often used, even among lawyers and judges, in two senses. *Lampos v. Bazar, Inc.* (1974), 270 Or. 256, 527 P.2d 376. Nevertheless there was no error in refusing to read Instruction No. 10 to the jury since Instruction No. 9 adequately conveyed the meaning of "prima facie." If the latter instruction had merely recited the language of the ordinance defendants would be on much stronger footing. Yet their argument conveniently ignores the subsequent portion of the instruction, stating:

"Unless you find that a speed limit of less than twenty-five miles per hour had been established along the section of the public road through Foster Park upon which the accident in question occurred, you are instructed that the speed limit upon this section of the road was twenty-five miles per hour."

Reading the instruction in its entirety it is clear that the jury was not inadequately instructed. They were advised to find that the speed limit was 25 mph unless the contrary was shown. Instruction No. 10 would not have augmented in any way the law enunciated in Instruction No. 9.

Furthermore, it cannot be said the jury acted improperly in determining that the presumption was overcome. To hold the jury was not entitled to believe Mosley's testimony that the speed limit was only 15 mph would run counter to well-settled rules of appellate review. The jury finds the facts and it could attach as much weight to Mosley's testimony as it felt it deserved.

Debra next insists that the court erred in giving the following instruction:

"In determining whether the driver of a motor vehicle had knowledge that injury would probably result from his or her wanton misconduct, responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances. Under our statute no person, young or old, can operate an automobile on the public highway in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guest for injuries caused thereby."

In its stead she submits that the court should have given her tendered instruction on the subject, which reads as follows:

"If you find that the accident was caused only by an error of judgment, then I instruct you that this fact standing alone will not amount to wanton or wilful misconduct. In considering whether this accident was only the result of an error in judgment, you may take into account the age of Debra A. Barrow, the length of time she had had a driver's license, and the amount of experience she had had as a driver."

At the heart of this dispute is the supposition that Debra should not be held to an adult standard of care in the operation of an automobile. Rather it is urged the jury should have been instructed that the age and experience of the driver are matters to

be considered in determining whether she was guilty of wanton misconduct under the guest statute. This position is untenable.

"In judging the conduct of the appellee herein we are bound to apply the same standard to him as we would to an adult even though he was but 16 years of age and had just obtained his driver's license earlier on the day of the accident. As was said in *Sausaman v. Leininger* (1957), 237 Ind. 508, 146 N.E.2d 414:

'The fact that appellant was a youth and that wanton impulses may be natural to young people does not excuse appellant of his misconduct. Neither does his immaturity excuse his failure to contemplate the consequences of his act. There is nothing in the statute which indicates a legislative intent that we should place one construction on the statute as applied to young people and another to adults. Therefore, in determining whether the driver of a motor vehicle had knowledge that injury would probably result from his wanton misconduct, responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances. Under our statute no person, young or old, can operate an automobile on the public highway, in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guests for injuries caused thereby.' "

*Fuller v. Wiles* (1972), 151 Ind.App. 417, at 423, 280 N.E.2d 59, at 62.

Accordingly there was no error in the trial court's instruction in this regard. The fact that this action was brought under the guest statute, which limits liability to wilful or wanton misconduct, does not change the standard of care for determining the responsibility of the driver. The basic standard of care by which the knowledge of the driver was to be judged was that of a reasonably prudent person in the same or similar circumstances. This standard applies regardless of the driver's inex-

perience in operating a motor vehicle. Inasmuch as Debra's instruction was an incorrect statement of the law it was properly refused.

Defendants further contend that the trial court erred in allowing Leslie to testify about her impoverished state. During direct examination Leslie was asked why she stopped going to school. Before she could respond defense counsel objected on the grounds that her answer would be completely irrelevant to the issues being tried. The objection was overruled and Leslie stated that her reason for quitting college was because she could not afford it.

Generally speaking, the measure of compensatory damages in negligence actions depends upon the nature of the injuries sustained by the plaintiff and not upon his wealth or poverty. Therefore where such damages only are recoverable, evidence is not admissible to show directly or indirectly the wealth or financial standing of the plaintiff. 22 Am.Jur.2d, *Damages* § 321. But see *Graves v. Thomas* (1884), 95 Ind. 361 where evidence that the person injured was poor and depended on labor for support was admissible as tending to prove that cessation from labor after the injury was caused by the injury.

While introduction of the aforementioned testimony must be condemned it does not appear that the evidence was of such character or importance as to inflame the passions of the jury. It does not seem reasonable to infer that the jury was influenced in its ascertainment of damages owing to Leslie for her injuries by the mere fact that she no longer could afford to attend college. From the context in which it was made this testimony cannot be construed as a statement regarding her general pecuniary condition. See *Wiest v. Twin City Motor Bus Co.* (1952), 236 Minn. 225, 52 N.W.2d 442. Thus defendants have failed to demonstrate any prejudice to their cause by its erroneous admission. *Brademas v. Real Estate Development Co.* (1977), Ind.App., 370 N.E.2d 997.

*Guenther v. Jackson* (1920), 73 Ind.App. 162, 126 N.E. 873 is clearly inapposite.

There the plaintiff sued to recover for injuries resulting from the alleged negligence of the defendant in causing a step on a stairway in a building owned by him to be in a dangerous condition. Over proper objections by defendant, plaintiff was permitted to testify as follows:

> " 'My little girl is an invalid. She has been that way since she was three months old. She was nine years old in November. She is entirely helpless. She does not walk or talk. She is beginning to talk a little now, not very much, says a few words.' "

126 N.E. at 874.

This evidence was held to be reversible error due to its manifest tendency to mislead the jury and enlist its sympathy for plaintiff. Obviously the difference between this evidence and that found in the case at bar is one of degree. Evidence giving rise to an inference that plaintiff's children will suffer as a result of her injuries is of a much stronger degree and therefore, more likely to arouse a jury than an isolated reference to a lack of funds for college. Basic human compassion responds more readily to human injury than to a monetary damage.

The next argument advanced is that the trial court erred in allowing Leslie, a non-expert witness, to express conclusory opinions on two ultimate fact issues. One instance occurred when Leslie responded affirmatively to a question posed by her counsel as to whether Debra had an opportunity at any time while following the Wilson vehicle to pass it safely.

The admissibility of lay testimony on ultimate factual issues was extensively reviewed in *Rieth-Riley Constr. Co. v. McCarrell* (1975), 163 Ind.App. 613, 325 N.E.2d 844 and its discussion bears repeating here.

> "We note however, that Rieth-Riley has argued another reason for not permitting the statement. Rieth-Riley maintains that the statement is inadmissible because the opinion expressed therein was improper opinion evidenced by a lay witness. Rieth-Riley submits that Pound's statement was in essence a conclusion opinion as to whether McCarrell could have avoided hitting the pipe. Such a statement, according to Rieth-Riley, invades the province of the jury in deciding whether the accident could have been avoided by McCarrell. Rieth-Riley maintains that the decision on this ultimate issue was the responsibility of the jury and not the witness.

> "The question of admissibility of lay witness opinion testimony on ultimate fact issues has recently been subject to reexamination by many courts and legal scholars. See, McCormick, Evidence § 12 (2d Ed. 1972). Under previous approaches, the rule in many jurisdictions, including Indiana, was a *per se* exclusion of lay witness opinion on an ultimate question which the jury was required to decide. *Southern Indiana Power Co. v. Miller* (1916), 185 Ind. 35, 111 N.E. 925; *New Jersey, I. & I. R. Co. v. Tutt* (1907), 168 Ind. 205, 80 N.E. 420. This strict approach, in our opinion, is unduly restrictive in that it would operate so as to deprive the trier of fact of useful information in situations where opinion testimony on an ultimate fact in issue would be the most desirable or perhaps the only vehicle for relating a particular happening or fact. Moreover, the strict approach of prohibiting the 'invasion of the province of the jury' by opinion testimony on ultimate factual issues is subject to misapplication in that it is easily confused with the generally accepted rule that expert opinion should not be heard on commonplace matters.

> "Through recognition of these shortcomings of the strict exclusionary approach, the majority of state courts have now adopted the philosophy that provided all other admissibility requirements are met, an opinion upon an ultimate fact may be given. See general discussion and cases cited in 32 C.J.S. Evidence § 446, and McCormick, Evidence § 12 (2d Ed. 1972). Exemplifying the new approaches to this problem is Rule 704 of the Rules of Evidence for United States Courts and Magistrates:

> 'Rule 704.

*Opinion on Ultimate Issue*

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'

"Thus the *per se* exclusion rule has been abrogated, and the trial judge at his discretion, may in an appropriate case, permit such evidence. In exercising his discretion, the trial judge should consider the nature of the issue and the offered opinion in light of all attendant circumstances of the particular case. This court will review such an exercise in judicial discretion only for an abuse thereof.

"Applying the above rationale to the case at bar, we find no reversible error demonstrated. Since Pound was the only eyewitness to the collision and since he had previously testified both as to his experience as an operator of motor vehicles and to the facts forming the basis of his statement, we are not inclined to hold that admission of his inference concerning the unavoidability of the accident based upon his perception of the totality of the circumstances was an abuse of judicial discretion." (Footnote omitted.)

325 N.E.2d at 852–853.

Likewise it was not an abuse of discretion for the trial judge to admit the challenged testimony concerning Debra's opportunity to pass Wilson in a safe manner. Leslie was a licensed driver at the time of the accident and during the course of her testimony she fully related the facts and circumstances underlying her opinion.

But even if admission of this evidence was an abuse of discretion defendants have not shown that it was reversible error. On cross-examination defendants elicited testimony from Leslie that if Debra had wanted to get around the Wilson automobile she had enough time. Any error in the admission of evidence is harmless if the same or similar evidence has been admitted without objection. *Richmond Gas v. Reeves et al.* (1973), 158 Ind.App. 338, 302 N.E.2d 795.

On another occasion Leslie was asked if her facial scars were a source of embarrassment. She replied that they were. Inasmuch as the jury had before it evidence of the nature and extent of Leslie's personal injuries, testimony as to the mental anguish suffered by her as a result of the accident was helpful to it in assessing such damages and no witness was in a better position to offer evidence of embarrassment than Leslie herself. See *Nielsen v. Brown* (1962) 232 Or. 426, 374 P.2d 896 where the court held that it was competent for the plaintiff to testify to her embarrassment in the presence of her husband resulting from the scars on her body. Accordingly it cannot be said that the trial court abused its discretion in allowing Leslie to express her conclusion opinion on this matter.

No reversible error having been shown, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.