Scott **ANTCLIFF**, Appellant
(Defendant Below),

v.

Joseph Raymond **DATZMAN**, Appellee
(Plaintiff Below).

No. 3–1281A312.

Court of Appeals of Indiana,
Third District.

June 3, 1982.
Rehearing Denied July 14, 1982.

Edward P. Dumas, Dumas, Moriarty & Dumas, Rensselaer, for appellant.

Michael J. Stapleton, Jeffrey J. Newell, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellee.

HOFFMAN, Presiding Judge.

This appeal arises from a jury verdict which awarded Joseph Datzman $50,000 in an action for damages which resulted from an automobile accident in which Datzman was a passenger in a vehicle owned and operated by Scott Antcliff. Datzman brought the action alleging that he was a guest in Antcliff's vehicle and that Antcliff was guilty of willful or wanton misconduct which proximately caused Datzman's injuries.

Antcliff has appealed this decision and presents the following issues for review:

(1) whether the trial court erred in failing to admonish the jury to disregard remarks made by Datzman regarding insurance;

(2) whether the trial court erred in denying Antcliff's motion for judgment on the evidence;

(3) whether the trial court erred in refusing to give Antcliff's tendered Instruction No. 5;

(4) whether the trial court erred in refusing to give Antcliff's tendered Instruction No. 6;

(5) whether the trial court erred in giving Datzman's tendered Instruction No. 7;

(6) whether the trial court erred in refusing to give Antcliff's tendered Instruction No. 8;

(7) whether the trial court erred in allowing testimony as to a traffic conviction of Antcliff;

(8) whether the trial court erred in allowing Datzman to testify regarding surgical procedures used on him;

(9) whether the trial court abused its discretion during voir dire examination of the jury panel; and

(10) whether the trial court erred in giving Datzman's tendered Instruction No. 8 and refusing to give Antcliff's tendered Instruction No. 2.

Datzman and Antcliff had been friends since they met while in the seventh grade. At the time of the accident, both were 20 years old, and they were home from their respective colleges to spend the Christmas holidays with their families. On the afternoon of December 22, 1976, the parties decided to go to a Christmas open house at Soup's, a tavern in Iroquois, Illinois. On the way, they stopped at a grocery store in Watseka, Illinois and purchased an eight pack of 7 oz. beers. Datzman drank two of the beers and Antcliff drank three.

After arriving at Soup's, each had two more beers before the open house began. The open house included a buffet with turkey and all the trimmings. For the next two hours, the parties ate from the buffet and drank 2–3 gin and tonics. When the other friends they'd expected to see at Soup's failed to appear, the two decided to go to the home of some friends in Brook, Indiana. They left Soup's between 7:30 and 8:00 P.M. It was dark and snowing. As they passed through a curve in the blacktop road, Antcliff lost control; the car left the roadway; and they crashed.

Both were taken to the hospital in Brook, Indiana and Datzman was transferred to a hospital in Lafayette, Indiana for further treatment. At the time of his admission to the hospital in Lafayette, tests revealed that Datzman had a blood alcohol content of .202. Antcliff was cited by the investigating police officer for driving while intoxicated and subsequently pled guilty.

The first issue Antcliff raises is whether the trial court erred in failing to admonish the jury to disregard remarks made by Datzman regarding insurance.

During cross-examination of Datzman, defense counsel was asking questions in order to lay a foundation for the introduction of an exhibit which was a transcript of prior statements made by Datzman. Defense counsel was confronting Datzman with a prior statement which was inconsistent with his testimony at trial when the statement at issue was elicited.

"Q You have testified as to the speed of the Antcliff vehicle immediately before the accident, haven't you, Ray?

"A Yes.

"Q And you have tstified [sic] as to the character of Scott's driving immediately before the accident, haven't you?

"A Yes.

"Q I'll ask you, Ray, on January 27th, 1977, at approximately one p. m. while you were in Lafayette Home Hospital, if you had a telephone conversation with a Pat Fitzgerald and at that time you told Fitzgerald these words, or these words in substance: 'I do not know how fast Scott was going before the accident.' Did you say those words?

"A I really don't remember, I was in the hospital.

"Q All right. January 27, 1977, was thirty-six days after the accident, right?

"A Yes, it would be about thirty-six, I guess.

"Q And I'll ask you, on January 27, 1977, while you were in Lafayette Home Hospital you had a telephone conversation with Pat Fitzgerald, and at that time and at that place you told Fitzgerald you did not remember if Scott was driving within reason before the accident.

MR. STAPLETON: Wait a minute.

"Q Did you stay [sic] those words?

MR. STAPLETON: Wait a minute, excuse me—

THE COURT: That question has been already answered.

MR. EDWARD P. DUMAS: A different question, Judge.

MR. THOMAS B. DUMAS: A different question, Judge.

THE COURT: No argument, please.

"Q And I'll ask you this question, Mr. Datzman. If on January 27th, 1977, while you were in Lafayette Home Hospital you had a telephone conversation with a Pat Fitzgerald and you, and Mr. Fitzgerald asked you this question: 'Was Scott driving decent before the accident or was he hotrodding it?' And your answer to that question was, 'I don't know how he was driving.'

MR. STAPLETON: Your Honor, excuse me.

"Q Was that—I'm not finished—was that question asked of you and did you make that response?

MR. STAPLETON: Never mind, I'll cover it on re-direct.

"A I don't remember, excuse me, I don't remember making that, I was in the hospital at the time and I remember some—

"Q Well, now, wait a minute, Ray. You either—

THE COURT: Well, just a minute, let him answer.

MR. EDWARD P. DUMAS: Well, I move to strike it as not responsive to the question. I asked him if he—

THE COURT: He hasn't said anything yet. Proceed.

"A I was trying, trying to say I remember some, some insurance guy calling me on the telephone—

MR. EDWARD P. DUMAS: At this time we will approach the Bench, Judge. May we approach the Bench, please?

THE COURT: We will excuse the jury under the same admonitions as before. Do not discuss the case in the jury room."

*Record* at 392–395.

Antcliff requested that the court admonish the jury to disregard any remarks made concerning insurance. He also requested a mistrial. The trial court denied both requests.

Not all mentions of insurance constitute reversible error. This Court dealt with a similar situation in the case of *Herman v. Ferrell* (1971), 150 Ind.App. 384, at 391, 276 N.E.2d 858, at 863, wherein it was stated:

"It is within the trial court's discretion to withdraw the submission of a cause from the jury where insurance has been interjected. If the trial court does not admonish the jury regarding the interjection of insurance during the trial and the admonishment is deemed necessary by one of

the parties, an instruction should be tendered."

In the case at hand as in *Herman*, no such instruction was tendered by the defendant.

It is clear from the record that Datzman's mention of "some insurance guy" was not solicited deliberately, nor was it made in bad faith. No abuse of the trial court's discretion has been shown. Thus, the trial court's decision to deny Antcliff's requests for an admonition and a mistrial was not reversible error.

Antcliff next asserts that the trial court erred in denying his motion for judgment on the evidence. He argues that the evidence showed that Datzman voluntarily incurred the risk as a matter of law.

■ Judgment on the evidence should be entered only when there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim. On a motion for judgment on the evidence, the evidence must be viewed in the light most favorable to the nonmoving party and if the evidence is conflicting such that reasonable minds might differ as to the conclusion to be drawn therefrom, judgment on the evidence is improper. *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148; *P–M Gas & Wash Co., Inc. v. Smith* (1978), Ind.App., 383 N.E.2d 357.

■ Datzman testified that when leaving Soup's, Antcliff appeared to be the same as when they'd arrived. Antcliff did not appear to Datzman to be intoxicated. He seemed to be in control of himself; he walked normally; and his speech was not slurred. According to Datzman's testimony, Antcliff began to speed up just before reaching the curve, at which time Datzman asked him to slow down. One could infer from this evidence that Datzman did not appreciate how dangerous the situation was until it was too late to abandon his course of action.

The incurring of a risk must be voluntary.

"If the continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, or if continuance of exposure to the danger is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine does not apply, since the exposure is not in a true sense voluntary."

*Ridgway v. Yenny; Ridgway v. Lombardo* (1944), 223 Ind. 16, at 22, 57 N.E.2d 581, at 583.

Whether or not Datzman incurred the risk in the situation he was presented with was a question upon which reasonable men might disagree. Therefore, it was properly left to the determination of the jury, and the trial court did not err in denying Antcliff's motion for judgment on the evidence.

■ Antcliff next alleges the trial court erred in refusing to give his tendered Instruction No. 5. In reviewing a trial court's refusal of a tendered instruction, the appellate court must determine whether the instruction correctly states the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the tendered instruction was covered by other instructions which were given. *School City of Gary v. Claudio* (1980), Ind.App. 413 N.E.2d 628.

■ Antcliff's tendered Instruction No. 5 dealt with his defense of incurred risk. Likewise, Antcliff's tendered Instruction No. 4, Antcliff's tendered Instruction No. 7, and Datzman's tendered Instruction No. 7, all of which were given to the jury by the trial court, also instructed the jury on the defense of incurred risk. The subject was amply covered and there was no need for further repetition. *Rieth-Riley Constr. Co. v. McCarrell* (1975), 163 Ind.App. 613, 325 N.E.2d 844.

The trial court's failure to give Antcliff's tendered Instruction No. 6 is the next error alleged on appeal. Antcliff's tendered Instruction No. 6 also dealt with the subject of incurred risk and as was stated previously, that subject was adequately covered in three other instructions which were given by the trial court.

The trial court accepted Datzman's tendered Instruction No. 7 and instructed the jury as follows:

"The defendant contends that at the time of the occurrence, the plaintiff Raymond Datzman had incurred the risk. If you find from a consideration of all the evidence that at the time of the occurrence the plaintiff Raymond Datzman did in fact incur the risk, then your verdict should be for the defendant. In order, however, for such a defense to operate or be applicable to this case, it must appear that Raymond Datzman had actual knowledge of the danger in question, and appreciated it, and voluntarily, or of his own choice, exposed himself to or encountered such danger, thereby incurring or taking upon himself the risk incident thereto. In other words, Raymond Datzman must have been consciously doing what he wanted to do with full knowledge of the existing conditions which would likely or probably lead to his injury.

"However, if continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, the doctrine of incurred risk does not apply, since the exposure is not in a true sense voluntary."

Antcliff alleges that giving the instruction was error because it requires a subjective test in measuring the extent of Datzman's knowledge. Antcliff contends that the objective "reasonable man" test should be utilized in making that determination.

This Court discussed at great length the dilemma of contributory negligence versus incurred risk in the case of *Kroger Co. v. Haun* (1978), Ind.App. 379 N.E.2d 1004. One of the factors which Judge Sullivan blamed for the confusion in this area is the infusion of the objective "reasonable man" test into the concept of incurred risk. Several distinguishing characteristics of the concept of incurred risk were set forth in that opinion:

"(1) Incurred risk demands a subjective analysis with inquiry into the particular actor's knowledge and voluntary acceptance of the risk . . . .

"(2) Incurred risk is concerned with the perception and voluntariness of a risk and is blind as to the reasonableness of risk acceptance . . . ."

379 N.E.2d at 1008.

The jury must use a subjective test in determining whether a party had actual knowledge and voluntarily accepted the risk involved when the defense of incurred risk is asserted. An objective standard is contemplated by the defense of contributory negligence; however, contributory negligence is not an available defense in guest statute cases and was not asserted by Antcliff. Therefore, the jury was properly instructed on the test to use in determining Datzman's knowledge of the danger.

Antcliff's tendered Instruction No. 8 which dealt with contributory wanton or willful misconduct on the part of Datzman was refused by the trial court. Antcliff emphasizes the intoxication of both parties as support for this instruction. Yet the trial court instructed the jury pursuant to Datzman's Instruction No. 4 that "intoxication of itself either on the part of the plaintiff or of the defendant is not sufficient to establish willful or wanton misconduct." To have given Instruction No. 8 would have been to confuse the jury.

Since Datzman did not control or have the right to control the vehicle and since he actually warned Antcliff to slow down, there was no evidence of contributory willful and wanton misconduct. It is not error to refuse instructions which are not applicable to the facts and evidence of the case. *Schwing v. McKibbin* (1970), 148 Ind.App. 222, 264 N.E.2d 629.

Antcliff next alleges that it was error to allow the testimony of Officer Gulley, the investigating officer, as to Antcliff's traffic conviction which arose out of the accident. While Officer Gulley cited Antcliff for driving under the influence and testified that he was aware that the citation resulted in a conviction, he also testified that he was not present when the conviction was entered.

Subsequent evidence established that Antcliff pled guilty to driving while intoxicated. Antcliff fails to demonstrate wherein he was prejudiced by Officer Gulley's testimony. Therefore if the admission of such testimony was error, it was harmless. *See Barrow v. Talbott* (1981), Ind.App., 417 N.E.2d 917.

 Antcliff also contends that it was error to allow Datzman to testify as to the surgical procedures performed on him after the accident, specifically that a surgical pin was inserted into his leg and the bone built back around it.[1] Antcliff argues that Datzman is not a medical expert and since he was under anesthesia at the time of surgery, could not possibly know what procedures were performed. Although Antcliff concedes that Dr. Wagoner, the treating physician, testified as to the surgical procedures used, he sees Datzman's testimony as a trial tactic to persuade the jury through repetition and over-emphasis.

Where an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony is sufficient for the jury to render a verdict without expert medical testimony. *Barrow v. Talbott, supra.* However, as was conceded by Antcliff, Dr. Wagoner subsequently testified as to the procedures used and x-rays showing the pin in Datzman's leg were admitted into evidence. Therefore, any possible error was rendered harmless.

The ninth error alleged by Antcliff is that the trial court abused its discretion in conducting voir dire by allowing counsel for Datzman greater latitude in questioning jurors than was allowed counsel for Antcliff, resulting in the denial of a fair trial for Antcliff.

 The trial court has broad discretionary power in regulating the form and substance of voir dire examination. *Hopkins v. State* (1981), Ind., 429 N.E.2d 631. A reversal can result only from a showing of abuse of that discretion.

 Antcliff has demonstrated no prejudice to him as a result of the voir dire. No prospective juror was challenged or excused as a result of Datzman's line of questioning. Antcliff does not allege that the jury, as constituted, was biased against him as a result of such questioning. Absent a showing of prejudice, this Court will not reverse a discretionary decision of the trial court. *Hunter et al. v. State* (1977), 172 Ind.App. 397, 360 N.E.2d 588.

Finally, Antcliff alleges the trial court erred in giving Datzman's tendered Instruction No. 8 and refusing to give Antcliff's tendered Instruction No. 2. The trial court accepted Datzman's tendered Instruction No. 8 and instructed the jury as follows:

"If you find for the plaintiff on the question of liability, you then must determine the amount of money which will fairly compensate plaintiff for those elements of damage which were proved by the evidence to have resulted from the negligence of defendant. You may consider:

(a) The nature and extent of the injuries;

(b) Whether the injuries are temporary or permanent;

(c) The physical pain and mental suffering experienced (and reasonably certain to be experienced in the future), as a result of the injuries;

(d) The value of lost time, earnings, salary and loss or impairment of earning capacity;

(e) The reasonable expense of necessary medical care, treatment and services (and the reasonable expense of future medical care, treatment and services);

(f) The aggravation of a previous injury;

(g) Disfigurement and deformity resulting from the injuries;

(h) Loss of enjoyment of life's activities.

---

1. Datzman testified, without objection from Antcliff, that a steel plate and screws were placed in his arm and that the pin in his leg later had to be removed because the top part of the pin was sticking into his hip.

"You are to determine whether these elements of damage have been proved by a consideration of the evidence relating to damages. Your verdict must be based on that evidence and not on guess or speculation."

Antcliff objects to this instruction because he argues there was no evidence to support an instruction in impaired earning capacity or aggravation of a previous injury.

In reviewing a claim that evidence was insufficient to support the giving of an instruction, the appellate court may look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. If there is any evidence to support the instruction, it was properly given. *Dominguez v. Gallmeyer* (1980), Ind.App., 402 N.E.2d 1295.

The evidence viewed in a light most favorable to Datzman with the inferences which could be drawn therefrom, is sufficient to support the portion of the instruction regarding impaired earning capacity. Dr. Wagoner testified that Datzman's injuries resulted in a 6% permanent partial impairment of the man as a whole. He suffers from constant numbness, pain, and loss of strength. Job transfers throughout the country are available through Datzman's employer. However, Datzman has stayed in states with a warmer climate. At the time of the accident, Datzman had been accepted at Ball State University to continue his accounting schooling. This he planned to do after gaining some work experience at a job in Watseka, Illinois. With the accident, this opportunity was lost.

We must agree with Antcliff, however, that the record contains no evidence to support that portion of the instruction regarding the aggravation of a previous injury. That portion of the instruction should not have been given. Yet, in this instance, the giving of it was not reversible error.

Generally, the giving of an instruction which is not relevant to the issues and not applicable to the evidence is error.

However, it is grounds for reversal only where it appears that the jury's verdict could have been predicated upon such an instruction. *Stanley v. Johnson* (1979), Ind. App., 395 N.E.2d 863. This instruction was phrased in such a way that the jury was told to consider the listed elements *only* if they had been proved by the evidence. If there was no evidence on a particular element of damages, the jury was not to guess or speculate.

Antcliff has not shown that the damage award was so outrageous so as to have necessitated that the jury awarded damages for impaired earning capacity or aggravation of a previous injury. The jury awarded $50,000. Evidence showed that Datzman had $16,368.64 in medical expenses already accumulated, $6,720 in lost income, and $8,000 in future necessary medical expenses, for a total of $31,088.64. In addition there was substantial evidence of pain and suffering and loss of enjoyment of some of his favorite activities. Antcliff has not shown that he was harmed by the instruction or that the jury considered it in reaching its verdict.

Antcliff also alleges as error the trial court's refusal to give his Instruction No. 2, which would have instructed the jury that there was no evidence from which it could assess damages on the basis of impaired earning capacity. As discussed previously, there was sufficient evidence to support an award of damages for impaired earning capacity. Therefore, it was not error for the trial court to refuse this instruction tended by Antcliff.

Having found no reversible error, the trial court is in all things affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.