**STRACK AND VAN TIL, INC., d/b/a Town & Country Market, Appellant–Defendant,**

v.

**Sharon CARTER, Appellee–Plaintiff.**

No. 45A03–0209–CV–311.

Court of Appeals of Indiana.

Feb. 17, 2004.

R. Brian Woodward, David. E. Woodward, Merrillville, IN, Attorneys for Appellant.

Kenneth J. Allen, James E. Brammer, Valparaiso, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Strack and Van Til d/b/a Town & Country ("Strack") appeals the jury's determination that its negligence caused injury to Plaintiff–Appellee Sharon Carter ("Carter").

We affirm.

### ISSUES

Strack raises five issues for our review, which we restate as:

I. Whether the trial court committed reversible error by admitting an "Employee Corrective Action Notice" into evidence.

II. Whether the trial court committed reversible error by admitting a photograph depicting the scene of Carter's fall into evidence.

III. Whether the trial court committed reversible error by admitting an investigative report into evidence.

IV. Whether the trial court committed reversible error by permitting Carter to introduce evidence of her poverty.

V. Whether the trial court abused its discretion in refusing to declare a mistrial.

### FACTS

At around midnight on October 31, 1998, Carter entered Strack's store to pick up some groceries. As Carter proceeded around the corner of an aisle to procure a box of cereal, she slipped and fell to the floor. Carter sustained numerous injuries, and she brought suit against Strack on the basis that Strack's negligence caused her fall. The jury found that Strack was ninety-percent at fault and awarded Carter $504,000.00 in damages. Strack now appeals.

Additional facts are disclosed below as they apply to a specific issue.

### DISCUSSION AND DECISION
### I. ADMISSION OF EMPLOYEE NOTICE FORM

■ At trial, Carter offered into evidence a form designated as an "Employee Corrective Action Notice" (hereinafter referred to as the "corrective form" or the "form"). This form, signed by Strack manager Kenneth Moore ("Moore"), was presented to Strack employee Jeff Brooks ("Brooks") after Carter's fall, and it stated that Brooks had shown a disregard for safety. Under the "details" section, the form provided that Brooks "was called to get a clean up. When he went to get a mop and bucket, [Brooks] left the mess unguarded. When he got back to the spill a customer had already fallen and injured themselves (sic). Whenever there is a wet spill, we must use wet floor signs." Appellant's App. at 70. Above the signatures of

Brooks and Moore is a statement providing that "I have received a full explanation of my failure to perform to the expected standards of the company, [and I] understand that further failure on my part will be due cause for disciplinary action." *Id.*

Strack contends that the trial court erred in admitting this document over its objection. Specifically, Strack argues that the document is an employee reprimand that has been determined by Indiana courts to be inadmissible.

■ The decision to admit or exclude evidence lies within the sound discretion of the trial court and is afforded great discretion on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997). We will not reverse that decision absent a showing of manifest abuse of that discretion. *Edwards v. State*, 724 N.E.2d 616, 620 (Ind. Ct.App.2000), *trans. denied.*

■ Ind. Rule of Evidence 407 provides that "[w]hen after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." Two principal reasons have been stated as support for the rule. *See* Robert L. Miller, Jr., *Indiana Practice: Courtroom Handbook on Indiana Evidence* § 407.101, p. 494 (2000 ed). The first reason is grounded in public policy and is based on the fear that permitting proof of subsequent remedial action will deter a defendant from taking action that will prevent future injuries. *Id.* at 495 (citing *Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1060 (7th Cir.1987)).[1] The sec-

---

**1.** At the time the *Kaczmarek* case was decided, Federal Rule 407 was identical to Indiana Rule 407. However, following amendment in 1997, the first sentence of the federal rule was expanded. It now reads:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not

ond reason is based on doubt over the probative value of subsequent measures. Evidence of repair is relevant primarily as a form of admission by the defendant. However, evidence of repair "may also connote the defendant's exercise of care beyond that required by the law: the defendant turns to measures beyond those required by reasonable care." *Id.* at 496. As our supreme court has observed, "A person may have exercised all the care which the law required, and yet, in light of the new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards." *Terre Haute & I.R. Co. v. Clem,* 123 Ind. 15, 23 N.E. 965 (1890).

Our examination of the language of the corrective form discloses that the giving of the form to Brooks was intended as a precursor to a more formal disciplinary process. Under the subject of "Action Taken," the form includes blanks next to the terms "verbal," "written," "suspension," and "termination," followed by blanks next to a list of the possible reasons for discipline. Appellant's App. at 70. An "x" is handwritten into the blank next to "written," followed by a second "x" to indicate that Brooks had shown a "disregard for safety." *Id.* These lines are followed by the narrative recitation of the facts surrounding this safety violation. *Id.* Above the signature line, the form states that the signer had "received a full explanation of my failure to perform to the expected standards of the company" and that "further failure on my part will be due cause for disciplinary action." *Id.*

■ As an initial stage in the disciplinary process, the corrective form is a subsequent remedial measure that may not be used to prove Strack's negligence or culpability in connection with Carter's injury.

admissible to prove negligence, culpable conduct, a defect in the product, a defect in

*See Dukett v. Mausness,* 546 N.E.2d 1292 (Ind.Ct.App.1989), *trans. denied* (holding that post-event disciplinary measures are not admissible to show negligence or culpability). Our analysis does not end here, however, because subsequent remedial measures may be admitted into evidence "when offered for another purpose such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Evid.R. 407.

In the present case, the following colloquy took place between Carter's counsel and Moore:

Q. And after [Carter] was hurt you were called from the back room to come out and see her; is that correct?

A. Yes.

Q. And you came out and she walked up to you and told you she had fallen; is that correct?

A. Yes.

Q. And then you took her back into the office at the store; is that correct?

A. Correct.

Q. Then you had her fill out forms and sign a release; is that correct?

A. Correct.

Q. And then you went back and looked for the spill; is that correct?

A. Yes.

Q. And, in fact, when she pointed out the area where she had fallen, did you look for the spill then too?

A. Yes.

Q. And did you find any spill?

A. No I did not.

Q. And you looked around in the area that she had fallen, right? Looked carefully?

A. Yes.

the product's design, or a need for a warning or instruction.

Q. And you took your feet and rubbed them on the floor to see if you could find a spill; is that correct?

A. Correct.

Q. And as far as you're concerned there was no spill there where she fell; is that right?

A. Correct.

Q. And you have no knowledge of any spill there where she fell; is that correct?

A. Correct.

(Transcript at 384–85).

■ Immediately thereafter, Carter sought to introduce the corrective form in an effort to impeach Moore. The form, which was signed by Moore as the supervisor on duty at the time the fall occurred, shows that Moore did believe that on the floor at the time Carter fell and sustained her injuries was a condition referred to as a "mess," a "spill," and a "wet spill." Appellant's App. at 70. The form also shows that Moore believed that a customer had fallen and had been injured because of the spill. In other words, the form served to show that Moore's trial testimony deviated significantly with his prior representations of what had happened on the night of Carter's fall. In this context, we hold that the trial court could have concluded that the corrective notice was admissible for impeachment purposes.[2] Accordingly, we will not reverse on this issue.

## II. ADMISSION OF PHOTOGRAPH DEPICTING THE SCENE

■ Carter offered into evidence a photograph taken by Moore of the area where the fall had occurred. Even though the photograph was taken near to the time that Carter was injured, the floor had allegedly been mopped immediately after the fall but before the picture was taken. Accordingly, in addition to showing the area where the fall occurred, the photograph also showed a sign warning anyone in the area that the floor was wet. The trial court admitted the photograph on the basis that even though it depicted a corrective remedial measure (the warning sign), it was relevant to show the stain on the floor that remained even after the area was mopped. This stain was presumably caused by the leakage of the contents of a container of "Soft Scrub" onto the floor. At the time the photograph was admitted, the trial court admonished the jury that in the photograph "there's that triangular shaped sign, right in the middle of the photograph. And I'm instructing you that you may not consider the presence of the sign, this photograph was taken after the occurrence. You may not consider the sign as evidence of the Defendant's negligence in this case." Transcript at 355.

Strack contends that the trial court abused its discretion in admitting the photograph because it shows a subsequent remedial measure. In support of its contention, Strack emphasizes that (1) the photograph was not admissible for any purpose; (2) the admonition was insufficient because it gave the jury no information to explain why the sign was there; and (3) Carter could have taken another photograph during the discovery process.

---

**2.** We agree with Judge Miller's observation that the provision of Evid.R. 407 allowing a witness to be impeached by the party calling him "carries the seeds of the Rule's self-destruction." *Indiana Practice: Courtroom Handbook on Indiana Evidence* § 407.101, p. 499 (2000 ed). We further agree that "the trial court must carefully apply the relevancy test of Rule 401 and the balancing test of Rule 403 to evidence purportedly offered for a purpose other than that forbidden by Rule 407." *Id.* at 500. There was no request in the present case that the trial court make such an application. We will not do so *sua sponte*.

In making its argument that the photograph was not admissible for any purpose, Strack cites *Leuck v. Goetz,* 151 Ind.App. 528, 280 N.E.2d 847 (1972) for the proposition that a photograph of the scene of the accident is not relevant when it portrays a subsequent remedial measure. In *Leuck,* plaintiffs injured in an automobile accident entered into evidence a photograph depicting the intersection where the accident occurred. The plaintiffs then asked the photographer whether any changes had been made in the area after the date of the accident. Over the defendant's objection, the photographer was permitted to testify that a stop sign had been placed at the intersection after the accident. On appeal, this court held that only the condition of the intersection at the time of the accident was relevant. *Id.* at 852. This court also held the photographer's testimony warranted reversal because the testimony might lead the jury to surmise that the defendant should have recognized "the preferential nature of the road upon which the [plaintiff's] vehicle was traveling." *Id.* We further held that the trial court's attempt to explain the testimony to the jury led to further prejudicial testimony. *Id.*

In the present case, the subsequent remedial measure was part of the only picture of the accident scene. Unlike in *Leuck,* it was the portrayal of the accident scene, and not the portrayal of the subsequent remedial measure, that was the evidence being offered. Furthermore, in the present case, unlike in *Leuck,* the trial court's admonition did not lead to subsequent prejudicial testimony. *Leuck* is not applicable to the case at hand.

■ Strack also contends that the trial court's admonishment was not effective in limiting the jury's consideration of the

photograph. On one hand, as a depiction of the accident scene and the stain on the floor, the photograph is both relevant and admissible. On the other hand, however, as a depiction of a subsequent remedial measure, the photograph is inadmissible. When evidence admissible for one purpose but not admissible for another purpose is admitted, "the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly." Ind. Rule of Evidence 105.

The trial court *sua sponte* admonished the jury not to consider the depiction of the subsequent remedial measure. Even though requested to do so, Strack did not assist the trial court in drafting the wording of the admonishment.[3] Strack cannot now challenge the content of the admonishment. Furthermore, we reject Strack's contention that any admonishment would be *per se* ineffective. Such admonitions are presumed to be effective, and Strack has not presented anything to lead us to the conclusion that the presumption has been rebutted.

■ Strack also argues that the court abused its discretion in admitting the photograph because Carter could have taken another photograph during discovery. While we agree that this was a factor for the trial court's consideration at the time it admitted the evidence, we cannot say that the trial court abused its discretion in determining that the evidence could be admitted with an admonition to the jury.

### III. ADMISSION OF INVESTIGATIVE REPORTS

Strack's insurer, Safeco, provided a packet of information to the store manag-

---

**3.** Trial counsel was of the opinion that any admonishment, no matter how it was worded, would be sufficient to cause the jury to ignore the portrayal of the subsequent remedial measure.

ers of the various Town & Country stores. In the packet was a document entitled "Town and Country Accident Investigation Report." After Carter's fall, Moore, acting in his capacity as a store manager, filled out the report, which was then sent to Safeco. Carter secured a copy of the report, and offered it into evidence.[4] The trial court admitted the report over Strack's objection that the contents of the report were privileged. On appeal, Strack contends that the trial court abused its discretion in admitting the document.

In *Richey v. Chappell,* 594 N.E.2d 443 (Ind.1992), our supreme court equated communications from an insured to his insurer with the communications between an attorney and client, and noted that the privilege attached to attorney/client communications pertains to communications through their agents or representatives. *Id.* at 446. The court emphasized that one of the primary duties of an insurer is the obligation to defend claims filed by third persons against the insured and that uncertainty about whether the insured's statements are privileged "gives rise to a conflict about whether a statement should be given at all, and undermines what should be a cooperative relationship among the insured, insurer, and attorney." *Id.* The court held that the communications between an insured and an insurer are privileged "where the policy of insurance requires the insurer to defend claims against the insured, [and the] statements [are] from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party...." *Id.* at 447.

In *Madison v. Hawkins,* 644 N.E.2d 184 (Ind.Ct.App.1994), the plaintiff attempted to distinguish *Richey* because the communications sought to be discovered were from the driver of the insured's borrowed vehicle to the insured's liability insurer. The plaintiff based his argument on the lack of privity between the driver and the insurer. *Id.* at 185. We noted that according to the language of the policy the driver of the vehicle was an insured. *Id.* at 186. We further noted that *Richey* did not require privity of contract. *Id.*

The plaintiff in *Madison* also argued that *Richey* pertained to documents that were privileged because they pertained to "sensitive matters which may be embarrassing, incriminating or detrimental to the insured," while the document sought to be discovered in *Madison* was a "routine form report." *Id.* We noted that *Richey* protected "statements from the insured to the insurer" and that "[t]here is no requirement that the statements be embarrassing, incriminating or detrimental in order to receive protection." *Id.* at 187.

■ In the present case, the "Town and Country Accident Investigation Report" was part of a packet of materials provided by the insurer for Strack to use in communicating the pertinent facts of an occurrence to its liability insurer. The occurrence referred to in the report is the basis for Carter's claim and is thus related to the insurer's duty to defend. As our supreme court held in *Richey,* it is essential that an insured be allowed to make a full statement to its insurer pertaining to an occurrence without the fear that the statement will be used by a third party. The fact that this report contains conclusions by a Strack supervisor that are based on statements by a Strack employee is of no moment. The privilege applies to

---

4. It appears that the report was secured from Strack during the discovery process, and at trial Carter argued that Strack waived its right to assert the privilege. On appeal, Carter has abandoned the waiver argument, and because there is no evidence to support the trial assertion, we will decide the issue on the merits.

communications between the insured and its agents to the insurer. *See Richey*, 594 N.E.2d at 446.

■ Carter contends that Strack cannot assert the privilege on appeal because it referred to the report both in questioning Brooks and in refreshing Brooks' memory. Carter cites *Homehealth, Inc. v. Northern Indiana Public Service Co.*, 600 N.E.2d 970, 974 (Ind.Ct.App.1992) and *Mitchem v. State*, 503 N.E.2d 889, 892–93 (Ind.1987) in support of her contention.

Typically, "a complaining party may not successfully assert error in the admittance of certain evidence if he himself offers and succeeds in getting the same or similar evidence before the jury." *Leuck*, 280 N.E.2d at 853. However, a party is "certainly entitled to attempt to lessen the effect in the jury's mind of [erroneously admitted] evidence without waiving his right to claim error in the admission" of such evidence. Here, where Strack's use of the report was clearly intended to lessen the effect of the erroneous admission of the report over a proper objection, we cannot say that Strack has waived its right to challenge the erroneous admission of the report during Carter's presentation of the evidence. *Homehealth* and *Mitchem*, which do not address a party's attempt minimize the effect of erroneously admitted evidence upon the jury, have no application here.

■ The question remains, however, as to whether the admission of the report was prejudicial to Strack. We may not reverse a trial court's decision absent a showing of prejudice, and the complaining party has the burden to show such prejudice. *City of Indianapolis Housing Authority v. Pippin*, 726 N.E.2d 341, 348 (Ind.Ct.App. 2000).

The report contains a recitation of the facts surrounding Brooks' discovery of the spill, his failure to cordon off the spill while he went to the back of the store to obtain a mop, and the slip and fall by a customer. In other words, the report is cumulative of evidence already admitted through the corrective action notice. Reversible error cannot be predicated upon the admission of evidence that is merely cumulative. *Donaldson v. Indianapolis Public Transportation Corp.*, 632 N.E.2d 1167, 1172 (Ind.Ct.App.1994). Strack has not shown prejudice resulting from the erroneous admission of the report.

## IV. EVIDENCE OF POVERTY

■ During Carter's case in chief, her counsel elicited testimony from her concerning her financial hardship after the accident. Over Strack's objection, the trial court admitted testimony that Carter was unable to pay utility bills, that she had to go begging for money, and that she was generally destitute. Strack contends that the trial court abused its discretion in admitting this evidence over Strack's objection.

■ Generally speaking, the measure of compensatory damages in negligence actions depends upon the nature of the injuries sustained by the plaintiff and not upon her wealth or poverty. *Barrow v. Talbott*, 417 N.E.2d 917, 924 (Ind.Ct.App. 1981). Therefore, "where such damages only are recoverable, evidence is not admissible to show directly or indirectly the wealth or financial standing of the plaintiff." *Id.*

The injunction against the use of evidence of "worldly condition of parties" is longstanding. In *Vandalia Coal Co. v. Yemm*, 175 Ind. 524, 92 N.E. 49, 53–54 (1910), our supreme court held that "[t]he worldly condition of parties, such as poverty or riches, whether possessed of property, whether married or single, or having a family, or a large or small family, the

number and ages of the family, the standing of the parties, whether dependent on self-support, etc., cannot properly be shown." (citations omitted). The court concluded that "[t]hese and the like conditions are too likely to arouse the sympathy of juries to a degree beyond awarding compensation." *Id.*

We have held that the admission of evidence of worldly condition pertaining to a handicapped child's dependence on the plaintiff may be presumed on appeal to be prejudicial. *Guenther v. Jackson,* 73 Ind. App. 162, 126 N.E. 873, 874 (1920). Whether this type of evidence should "be reversible error due to its manifest tendency to mislead the jury and enlist its sympathy for [a] plaintiff ... is one of degree." *Barrow,* 417 N.E.2d at 925. When the persuasive force of the evidence does not rise to the level of the kind of evidence admitted in *Guenther,* the presumption does not attach and the defendant is required to "demonstrate any prejudice to [its] cause by its erroneous admission." *Id.* at 924.

In the present case, Carter's counsel was permitted to elicit the following information over the objection of Strack's counsel:

Q: And I guess, Sharon, what I'm trying to get at, is what was going through your mind when you were watching your assets deplete and you know you got bills to pay and obligations to meet and food to buy and the rent to pay?

A: Where was I going to get it from? I knew these things were going to run out if I had to stay off work. And my kids they were great, they—you know, they came, they helped me pay my bills and they just, generally, helped take care of me.

And when my sick pay finally did run out, I had to—I went to the trustee and they would give you a vou—they gave me a voucher for part of my rent. And then I had to go to different churches and get donations to make it until I had enough to pay my rent. And then I went to food banks and that (sic) for food.

\*　　\*　　\*　　\*　　\*　　\*

Q: How did that make you feel to rely on charity of others?

A: Made me feel lousy. I've never— I've always done for myself, or at least try to do for myself. I've never had really relied on other people. And I had plenty of people there to rely on, but it was like I don't want to feel like I was using them.

(Transcript at 723–24).

While the admission of this evidence was clearly improper, we do not believe that the evidence rises to the level of the evidence erroneously admitted in *Guenther.* As this court stated in *Barrow,* "[*Guenther* ] is clearly inapposite ... [e]vidence giving rise to an inference that plaintiff's children will suffer as a result of her injuries is of a much stronger degree and therefore, more likely to arouse a jury than [a reference to lack of funds]. Basic human compassion responds more readily to human injury than to a monetary damage." *Id.* at 925. Because the erroneously admitted evidence is more like the evidence in *Barrow* than that in *Guenther,* we conclude that it is incumbent upon Strack to show prejudice in the present case. Because Strack does not do so, we hold that the trial court's error is harmless.

## V. NECESSITY OF A MISTRIAL

Strack refers to alleged misconduct by Carter's counsel, and contends that, while each is insufficient standing alone to warrant a mistrial, the cumulative effect of the incidents "rendered the entire trial prejudicial to [Strack]." Appellant's Brief at 18. We disagree.

The trial court's determination of whether to grant a mistrial·is afforded great deference on appeal·because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *City of Indianapolis v. Taylor,* 707 N.E.2d 1047, 1058 (Ind.Ct. App.1999), *trans. denied* (quoting *Kavanaugh v. State,* 695 N.E.2d 629, 632 (Ind. Ct.App.1998)). Mistrial is an extreme remedy invoked only when no other measure can rectify the perilous situation. *Id.* We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. *Id.* Appellate courts do not have the trial court's ability to assess the impact of alleged misconduct, and isolated scenes may tend to take on importance entirely out of proportion when viewed as part of a written record. *King v. Ransburg,* 111 Ind.App. 523, 39 N.E.2d 822, 825 (1942).

The first incident of misconduct alleged by Strack is that Carter's counsel attempted to influence prospective jurors by· engaging in a discourse about jury selection with Carter while both were within hearing distance of the jury venire. Not surprisingly, Carter's counsel questions the accuracy of this allegation. We need not decide whether the incident actually occurred, however, because Strack has not indicated that it took any steps to address this alleged misconduct during jury selection.

The second incident of misconduct alleged is that Carter's counsel exhibited to the jury a photograph ·that was the subject of a motion in limine· and was not admitted at the time it was exhibited. The trial court's proper admission of this photograph into evidence is discussed in Issue II above. Although Carter's · counsel should not have exhibited the photograph before its relevance and admissibility was determined, we see no prejudice to Strack.

The third incident of misconduct alleged is that during the direct examination of Moore, Carter's counsel exhibited to the jury a demonstrative exhibit, in the form ·of ·a placard or· cone, which was neither admitted into evidence nor mentioned to opposing counsel before trial. The transcript discloses, however, that Strack's objection to this exhibition was denied as untimely. Any harm to Strack should have been addressed by a timely objection.

The fourth incident of misconduct alleged is that during trial Carter's counsel stated before the jury that he had wanted to "chat" with a witness' mother but was prevented from doing so by Strack. We agree with Strack that counsel's statements were highly inappropriate, but we note that the jury was immediately admonished to disregard the remarks. We presume that the admonishment was appropriate, especially in light of Strack's failure to ask for an immediate mistrial.

The fifth incident of misconduct alleged is that Carter's counsel began questioning Carter about her poverty before seeking permission of the trial court to do so. Strack emphasizes that before the question was asked, the trial court had granted a motion in limine addressing this topic. Given our discussion in Issue IV above, we conclude that Strack was not prejudiced by counsel's question.

The final incident of misconduct alleged is that Carter's counsel contacted a juror at the law firm where she was employed. A review of the record, however, discloses that counsel ·called a local attorney and the juror, who had come into the office after hours ·to do some administrative tasks, answered the phone. Counsel left a message and did not realize that he was talking to the juror. After question-

ing the juror, the trial court determined that there was no need to remove the juror, a determination that Strack had already reached. Under these circumstances, there was no prejudice to Strack.

We conclude that the trial court did not abuse its discretion in denying Strack's motion for mistrial. The incidents of alleged misconduct, whether considered individually or collectively, caused no prejudice to Strack.

## CONCLUSION

The trial court committed no reversible error in this case. Affirmed.

RILEY, J., and DARDEN, J., concur.